# Richmond.

## Town of Suffolk v. Parker.

### December 11, 1884.

1. APPELLATE PROCEEDINGS—*New Trial.*—The appellate court will not disturb a verdict where the evidence, not the facts, is certified, unless, after discarding all the parol evidence of the exceptor, and giving full faith to that of the exceptee, the verdict shall still appear plainly wrong.

2. IDEM—*Exceptions.*—Where trial-court overrules motion to exclude jurors, and exception to the ruling is not made until after verdict, the exception will not be considered, because it came too late.

3. IDEM—*Juries—Objection after Verdict.*—Under Code 1873, ch. 158, sec. 21, no irregularity in any writ of *venire facias,* or in the drawing, summoning, returning, or empaneling of jurors, shall be sufficient to set aside a verdict unless the objector was injured by the irregularity, or the objection was made before the swearing of the jury; and this cures the irregularity, where the county judge failed to make the annual jury list according to law, but gave the clerk twenty-eight names of persons, who were summoned as jurors, and from these the jury is regularly chosen without objection until after verdict, and the objector was not thereby injured.

4. MUNICIPAL CORPORATIONS.—*Market Houses—Nuisance.*—Though a town be entitled to erect market houses, yet they must be so managed as not to injure the rights and impair the comfort of the owners of adjacent property. *Pruner* v. *Pendleton,* 75 Va. 516.

Error to judgment of circuit court of Nansemond county, rendered in an action on the case instituted in August, 1881, by Mrs. Georgiana Parker against the town of Suffolk, for an alleged nuisance in negligently erecting, using, and managing its market house. At and after the nuisance, she owned and

occupied a dwelling house, situated in that town near the market house. When she became such owner there was no market house near it, and none contemplated. Subsequently it was erected, and by reason of the town's careless use and management thereof, her house became uninhabitable in consequence of the offensive and noxious vapors and stenches arising from the market house, and the decayed animal and vegetable matter thrown therefrom on her premises, and thereby her property had greatly fallen in value. The jury found for her and assessed her damages at $500. To the judgment rendered on this verdict, the town obtained a writ of error and *supersedeas.* At the trial, several citizens of the town, in other respects unobjectionable, were sworn in as members of the jury, to which objection was made by the defendant before, but no exception was taken to the overruling of the objection until after the verdict. The county judge had failed to make out the annual jury list required by law, but had furnished the clerk a list of twenty-eight persons, who were summoned as jurors. From these the jury was selected. No objection was made by the town until after the verdict, and it suffered no injury by the irregularity.

*R. R. Prentiss, M. Briggs,* for the plaintiff in error.

*Causey & Rawls, John Goode,* for the defendant in error.

RICHARDSON, J., delivered the opinion of the court :

The plaintiff's declaration contains three counts, the material allegations in which are substantially the same.

Omitting the usual preliminary matter of inducement the declaration avers that, at the time of the alleged grievances thereinafter set forth, and thereafter until the commencement of this suit, the plaintiff was lawfully possessed of a certain dwelling house, with the appurtenances, situate and being in

said town of Suffolk, county of Nansemond, and state of Virginia, and in which said dwelling house, with the appurtenances, the said plaintiff, at the time of the committing of the grievances complained of, inhabited and dwelt, and continued to inhabit and dwell therein until the bringing of this suit. And the said defendant, before and at the time of the committing of the grievances thereinafter complained of, was possessed of a certain market place near the said dwelling-house, with the appurtenances of the said plaintiff, and by reason thereof the said defendant, before and at the time of the committing of the grievances by the said defendant, as thereinafter mentioned, ought to have hindered and prevented the noisome, noxious, offensive and unwholesome smells, vapors and stenches from proceeding and issuing from the said market place, and ascending and coming unto and into the said premises of the said plaintiff; and the said defendant ought also to have hindered and prevented the large quantities of dead meat, carcasses, excrement and filth from remaining upon the said market place, and from being thrown and cast upon the said premises of the said plaintiff. Nevertheless, the said defendant, well knowing the said last mentioned premises, but contriving and wrongfully and unjustly intending to injure, prejudice and aggrieve the said plaintiff, and to incommode and annoy her in the possession, use, occupation and enjoyment of her said dwelling-house, with the appurtenances, theretofore, to wit: on the —— day of ——— 188—, and all divers other days and times between that day and the commencement of this suit, wrongfully and unjustly suffered divers large quantities of dead meat, carcasses, excrement and filth to be thrown and cast upon the said premises of the said plaintiff; and also thereby divers noisome, noxious, offensive and unwholesome smells, vapors and stenches during the time aforesaid proceeded and issued from the said market place and ascended and came unto and into the said premises of the said plaintiff; and on these several days and times, these greatly annoyed and incommoded the said plaintiff in her use and

habitation of the said dwelling house; and also the said plaintiff hath been and is hindered and prevented from letting her said premises to a tenant in a beneficial manner, and that she has been thereby deprived of great gains and profits which she otherwise might and would have derived and acquired.

The second count—after setting out that, at and before the time of the committing of the grievances thereinafter mentioned, the plaintiff was lawfully possessed of a certain other messuage and premises situate and being in the said town of Suffolk, which, at the several times therein mentioned, the said plaintiff occupied, inhabited and dwelt in—avers that, the defendant, well knowing the premises, but contriving and intending to injure, prejudice and aggrieve the said plaintiff, and to incommode and annoy her in the possession, occupation and enjoyment of the same, theretofore, to-wit: on the —— day of ——, 18—, and on the several days and times aforesaid, wrongfully and injuriously caused divers noxious, offensive and unwholesome vapors, fumes, smells and stenches to arise and ascend near to, in and about the said last mentioned messuage and premises of the said plaintiff, and that the same have thereby been rendered and are become uncomfortable, unhealthy and unwholesome and unfit for habitation; and that the said plaintiff hath thereby been and still is greatly annoyed and incommoded in the possession, use, occupation and enjoyment thereof, and hath been and is by means of the premises otherwise greatly injured and damnified.

The third and last count avers that, at the time of the committing of the grievances therein mentioned, the said plaintiff was and from thence, &c., lawfully possessed of a certain other messuage and premises situate and being in the town of Suffolk, county of Nansemond, and state of Virginia, which said messuage and premises the said plaintiff purchased and became lawfully possessed of, and inhabited and occupied before the said defendant had bought and made the said market-place, and before she had any knowledge or information that the said de-

fendant or any other person would buy and use the said premises as a market-place; which said messuage and premises of the said plaintiff, the plaintiff at the several times thereinafter next mentioned, occupied, inhabited and dwelt in, and did still occupy, inhabit and dwell in at the commencement of this suit, to-wit: in the town, county and state aforesaid. Yet the said defendant, well knowing the premises, but contriving and intending to injure, prejudice and aggrieve the said plaintiff, and to incommode and annoy her in the possession, occupation and enjoyment of her said last mentioned messuage and premises, theretofore, to-wit: on the —— day of ————, 18—, and on the several days and times aforesaid, wrongfully and injuriously caused divers noxious, offensive and unwholesome vapors, fumes, smells and stenches to arise and ascend near to, in and about the last mentioned messuage and premises of the said plaintiff And that the said defendant also caused numerous carts, wagons, and other vehicles containing various and sundry articles which sent forth noxious, offensive and unwholesome vapors, fumes, smells and stenches, to be placed and remain in, around, near to, in front of and about the said last mentioned messuage and premises of the plaintiff, and the same have thereby been rendered, and are become uncomfortable, unhealthy and unwholesome and unfit for habitation, thereby rendering the said premises of the plaintiff of much less value than they otherwise would and should be, and therefore greatly reducing the value of the said messuage and premises of the said plaintiff. And that the said plaintiff hath thereby been, and still is, greatly annoyed and incommoded in the possession, use, occupation and enjoyment of the said last mentioned messuage and premises, hath been and is by means of the premises otherwise greatly injured and damnified to the damage of the plaintiff of $500, &c., &c.

The cause was tried at the October term, 1882, of said circuit court, when the jury returned a verdict in favor of the plaintiff, assessing her damages at $500, that being the amount of damages laid in the declaration.

There appear in the record four bills of exceptions taken by the defendant to certain rulings of the court. These respectively set forth the errors assigned by the defendant, and will be considered in their order.

By bill of exceptions, No. 1, it appears that before the jury was sworn to try the issue in the cause, the defendant objected to Francis O. Rawls, Euclid B. Holloman and Columbus Lassiter, three of the jurors, on the ground that they were citizens and tax-payers in the town of Suffolk, and hence had such an interest in the result of the cause as to render them incompetent jurors. It appears that each of these jurors were sworn to answer such questions as might be propounded to them by the court; that they were questioned by the court touching any interest or bias they might have in respect to the matter to be tried, and that each of them answered that he was a resident in and tax-payer of the town of Suffolk, yet each stated that he was conscious of no bias or prejudice for or against either party, but could and would render a verdict according to the evidence, and thereupon the court permitted them to be sworn as jurors. It also appears by this bill of exceptions that no exception to this ruling of the court was taken at the time, nor any notice given of any intention to save the point until after the verdict was rendered by the jury. The objection came too late. The well settled practice is to either take the exception at the time of the ruling objected to, which it is the right of the exceptor to do, or else as a matter of conscience, and to prevent unnecessary delay in the trial, to give notice that the point ruled is to be saved if necessary, and it is indispensable, at all events, to give such notice before verdict. 4 Minor's Inst., part 1, 745; *Washington and N. O. Telegraph Co.* v. *Hobson & Son*, 15 Gratt. 122.

Moreover, any interest or bias that these jurors might have felt, so far as disclosed by the record, would, in the nature of things, they being citizens and tax-payers of said town, have been in favor of and not to the prejudice of the defendant cor-

poration. But however valid the objection, the defendant neg-
lected in the proper time and manner to make it available. The
statute provides, that in any case where a town or other muni-
cipal corporation shall be a party, and the trial is had in a court
of said town or county, the judge of the court in which such
suit shall be pending shall, upon the application of *either* party,
cause to be summoned twenty freeholders from an adjacent
county or town, from which panel a jury shall be selected to
try such case. Acts 1879–80, ch. 20, p. 13. Having neglected
to avail itself of a plain remedy provided for just such a case, it
comes with bad grace from the defendant to object to three of
its own citizens, who are shown to have been competent jurors.
The said circuit court did not err in permitting these citizens to
be sworn as jurors, and to act as such.

The second assignment of error by the appellant is, that the
verdict is contrary to law and to the evidence, and that the
damages are excessive. This is the defendant's bill of exceptions
No. 2, in which is certified, not the facts proved, but the evi-
dence. In such case, nothing is better settled than the rule
which requires the court to exclude all the parol evidence of the
exceptor in conflict with that of his adversary, and giving full
faith and credit to the latter, refuse to set aside the verdict and
grant a new trial, unless it then plainly appears that the ver-
dict is wrong. *Read* v. *The Commonwealth*, 22 Gratt. 924, and
numerous other cases.

The only direct evidence offered for the plaintiff is the testi-
mony of the plaintiff herself. She testifies in substance that
she was the owner in fee of the house and lot described in the
declaration and immediately adjoining the market-house, in the
town of Suffolk; that she had owned her lot about seven years,
and that it cost her one thousand dollars with the mere shell of
a house upon it; that she weather-boarded and painted the
house, and plastered the whole inside of the building, and had
fenced and repaired the property generally at a very consider-
able outlay. That at the time she purchased and improved her

lot, there was no market-house next her lot nor any talk about erecting one there. That since the erection of said market-house up to the commencement of this suit, she had been subjected to a great and continuing nuisance. That the stench on her lot from the dead carcasses of fowls, which had been brought to market and died and had been thrown over the fence on to her premises, was very offensive to her, that these dead carcasses and garbage generally had even attracted buzzards, and that she had seen there nearly or quite a dozen at one time. That she saw on one occasion on her lot one dead duck, one dead goose, one dead chicken and one joint of spoiled beef. That beef bones, rotten fish, beef brains and other filth were thrown upon her lot. That she could not say they came from the market, but she believed they did; they were not there before the market was erected. That on Sundays, and when the market was closed, flies swarmed into her house; that grape hulls, crab shells and cabbage leaves were thrown in great quantities about her front door, before which market-carts were drawn up to the side-walk. That in consequence of the ground being raised in and around the market-house, a vast deal of water ran upon her lot and stood there for days after a heavy rain. Such is the direct sworn complaint of Mrs. Parker. It is all denied by the defendant, the plaintiff in error, who introduced a number of witnesses to make good the denial. It is not necessary to discuss the appellant's testimony, except to observe (1) that most of the witnesses do not live in the immediate vicinity of the market-house, and none of them, except one, as near as the residence of Mrs. Parker, and while some of them visited the market daily, some occasionally, and others only passed the street (some distance in front of the market), several times a day, none of them had equal opportunities with Mrs. Parker of correct information as to the causes of her complaint; and (2) their testimony in relation to the grounds of complaint, is negative in character, and not necessarily inconsistent with Mrs. Parker's testimony ; in fact in some particulars, there is a marked consistency.

No effort is made to discredit Mrs. Parker. She stands, therefore, not only unimpeached, but, for the purposes of this case, unimpeachable. Taking her testimony, her case was made out. So thought the jury, and so thought the judge who presided at the trial. There remains only to be considered the defendant's third and fourth bills of exception; and these are practically one, and will be considered together.

By the said third bill of exceptions, it appears that the defendant moved the court to set aside the verdict and grant it a new trial, on the ground that the jury was irregularly and unlawfully chosen. And the said fourth bill of exceptions rests upon the alleged error of the court below in overruling the defendant's motion for a *venire facias de novo*. The facts certified in said bill of exceptions No. 3, are these: The Hon. R. H. Rawls, judge of the county court of Nansemond, and who was also one of the counsel for the plaintiff in this cause, gave the sheriff a list of twenty-eight names of citizens residing in different districts of said county, equally and of all political parties, to be summoned as jurors for the term of the said circuit court at which this case was tried. That when the clerk applied to Judge Rawls for a jury he (Judge Rawls) stated that he did not have have time to make a list of three hundred; that he would make a list of twenty-eight, if he would accept it as satisfactory, which was done. That the clerk issued a *venire facias* for the said twenty-eight citizens, and they were summoned by the sheriff to serve as jurors, and from this list of persons, the jury, which rendered the verdict in this cause, was regularly chosen; that the said jurors were not drawn by the clerk from the jury-box in the clerk's office. All of which facts were admitted in open court by the said R. H. Rawls. But the court being of opinion that the defendant had sustained no injury on account of the irregularity in obtaining the jury, and the defendant making no objection before the swearing of the jury, overruled the said motion and refused to set aside the said verdict and grant a new trial.

It was conceded in argument here that not only was this ob-

jection not taken until after the jury was sworn, but not until after the jury had returned their verdict. It was also conceded in argument that Judge Rawls.had been on the bench as judge of the county court of Nansemond but a short time; had been much engaged during that time in the trial of criminal and other causes of importance, and had, in the press of his official duties, omitted to make the annual list of jurors in the time and manner prescribed by law. Hence there was no regular list from which to draw the list of jurors for service at the time of the court at which this trial was had, and under the circumstances there was no way to remedy the oversight but by an irregular list as furnished by said county judge. The law wisely provides for such an emergency.

By section 21, chapter 158, Code 1873, it is provided: " No irregularity in any writ of *venire facias,* or in the drawing, summoning, returning, or empaneling of jurors, shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the swearing of the jury."

The terms of this section embrace everything in the nature of a. departure from the regular mode prescribed for the make up of jurors. That the *venire facias* in this case was irregular is undeniable; but it is one of the irregularities provided for by said section 21 of chapter 158. It is, however, under the circumstances, an irregularity of which complaint was made too late, one which worked no injury to the defendant, as certified by the trial-judge, who had all the facts and circumstances in hand.

We must not, however, be understood as giving the least judicial sanction or encouragement to such irregularity. On the contrary, while it is pleasant in this case to feel, as we do, assured that no corrupt or even improper motive is imputed by any one to the county judge, who has been guilty of this serious omission, it is only by virtue of the statute above referred to, and the circumstances which exempt the dereliction from suspicion of any improper motive that it can be excused.

In conclusion, it need only be said that while the town of Suffolk, a municipal corporation, had authority to erect the market house in question, yet the law requires it to be maintained and managed in a reasonably proper manner, and with a just regard to the rights of the owners of the adjacent property. So far from having performed this plain and reasonable duty, so essential to the health and comfort of others, it has so negligently and wrongfully used and conducted its market place, as to render it an intolerable nuisance to the defendant in error, and render it impossible to live in the house with any sort of comfort. This being so, the well settled law is, that said corporation is liable in damages. *The People* v. *The Corporation of Albany*, 11 Wend. 539; *Smith* v. *The City Council of Alexandria*, 33 Gratt. 208; *The People* v. *Cunningham*, 1 Denio, 524; *Pruner & Hubble* v. *Pendleton and others*, 75 Va. 516.

Upon the whole, we are of opinion there is no error in the judgment of the said circuit court, and the same must be affirmed with costs to the defendant in error.

JUDGMENT AFFIRMED.