# JENKINS v. HANKINS.

## (*Nashville.* March 6, 1897.)

1. SUPREME COURT. *Practice upon successive trials and bills of exceptions.*

   On appeal from the final judgment in a case where several trials have occurred below and have been preserved by separate bills of exceptions, the entire cause is brought up for review, and the proceedings of each trial will be considered separately and independently upon its own bill of exceptions and in the order in which the trials occurred. (*Post, pp. 547–549.*)

   Acts construed: Acts 1875, Ch. 106.

   Cases cited and approved: State v. Perry, 4 Bax., 438; King v. Miller, 8 Bax., 382; Railroad v. Conley, 10 Lea, 531; Morgan v. Bank, 13 Lea, 234; Railroad v. Higgins, 85 Tenn., 620; Railroad v. Scott, 87 Tenn., 494.

2. VERDICT. *For damages in cases of tort, when set aside.*

   A verdict for damages in a case of tort will not be set aside as being too large or too small unless its amount is such as to indicate passion, prejudice, partiality, corruption, or unaccountable caprice on the part of the jury, and in such case the Court will set it aside equally whether the objection be that it is too large or that it is too small. (*Post, p. 549.*)

   Cases cited and approved: Campbell v. Thornburg, 3 Head, 109; Tennessee, etc., Co. v. Roddy, 85 Tenn., 400.

3. SAME. *Same.*

   Where the objection to a verdict for damages in a case of tort is to the amount, not to the fact of the verdict, this Court will not sustain the action of the lower Court in setting it aside as being "against the evidence," unless upon its own independent investigation of the facts, untrammeled by the opinion of the lower Court, it shall conclude the jury acted from passion, prejudice, partiality, corruption or unaccountable caprice. (*Post, pp. 549, 550.*)

   Cases cited and approved: Tennessee, etc., Co. v. Roddy, 85 Tenn., 400; Turner v. Turner, 85 Tenn., 387.

14 P—35

4. SAME. *Same.   Case in judgment.*

This Court holds. upon a review of the facts fully recited in the opinion, the trial Judge erred in setting aside as too small a verdict of one cent for the killing of plaintiff's intestate by defendant in a personal difficulty.   (*Post, pp. 553–556.*)

5. CHARGE OF COURT. *Erroneous as to civil liability of insane person.*

The doctrine that an insane or unconscious person is responsible for compensatory damages for his torts is erroneously applied to a case where the plaintiff caused the insanity or unconsciousness of defendant by the infliction of unlawful violence. (*Post, pp. 557, 558.*)

Cases cited: Ward *v.* Conatser, 4 Bax., 64.

6. ARGUMENT OF COUNSEL. *Regulation of by Court.*

Where the Court upon its own motion stopped counsel in the course of an improper argument, it is error for it to fail to stop counsel on the other side in presenting the same improper matter to his client's advantage, even if no objection is interposed.   (*Post, pp. 558, 559.*)

7. COSTS. *No more costs than damages.*

The statute that allows no more costs than damages when the verdict in certain cases of tort does not exceed five dollars, applies alike whether the injury did or did not cause death. (*Post, p. 559.*)

Code construed: § 4939 (S.); § 3922 (M. & V.); § 3198 (T. & S.).

Case cited: Steffner *v.* Burton, 87 Tenn., 135.

## FROM   WILSON.

Appeal in error from Circuit Court of Wilson County.   W. C. HOUSTON, J.

W. M. HAMMOCK, W. S. FAULKNER, JNO. C. SANDERS, and JAS. J. TURNER for Jenkins.

JNO. S. McMURRAY, R. CANTRELL, R. McMILLAN, and ROBT. SMITH for Hankins.

SNODGRASS, C. J. The son of the defendant in error was killed by Jenkins in a personal difficulty, and this suit was brought against Jenkins for damages. It has been several times tried, resulting in various judgments for and against the plaintiff. At the September term, 1895, the case was tried, and a verdict was rendered in favor of plaintiff and awarding one cent damages. This verdict was, on motion of plaintiff, set aside by the Circuit Judge, because, as averred in the motion and recited by him, it was "against the evidence." To this action of the Court the defendant excepted, making a bill of exceptions thereto, which was signed by the Court and became a part of the record. The case was again tried at the January term, 1896. On this trial a verdict was rendered in favor of the defendant, and, on plaintiff's motion, this was again set aside, on the ground that the verdict was not sustained by the evidence. A last trial was had at the May term, 1896. Jury rendered verdict in favor of plaintiff, and assessed his damages at $500. Motion for new trial was made and overruled, and the defendant appealed in error.

The first question involved is as to the action of the Circuit Judge in setting aside the verdict rendered at the September term in favor of the plaintiff, but assessing his damages at one cent.

Chapter 106 of the Acts of 1875 is, ''An Act to provide for bills of exceptions and to regulate the practice where new trials are granted or refused,'' and provides, '' that where a motion for a new trial shall be granted or refused, either party may except to the decision of the Court and may reduce to writing the reasons for said new trial, ·together with the substance of the evidence in the case, and also the decision of the court on said motion, and it shall be the duty of the Judge before whom such motion is made to allow and sign the same, and such bill of · exceptions shall be a part of the record in the case, and it shall be lawful for the appellant in such case to assign for error that the Judge in the court below improperly granted or refused a new trial therein, and the Supreme Court shall have power to grant new trials or correct any errors of the Circuit Court in granting or refusing same.'' Acts 1875, p. 189.

Under this Act the right of either party to preserve any just and proper advantage obtained by a verdict in his favor which has been erroneously set aside by the Circuit Judge, is secured, and while he cannot appeal at the time such action is taken, where the case is continued in Court for future trial below (*State* v. `Perry*, 4 Bax., 438; 8 Bax., 382; 10 Lea, 531; 13 Lea, 234), he may bring this question up on appeal from the subsequent final judgment rendered against him. *Ib.* In such case determination of the correctness or incorrect-

ness of the action of the trial Judge in setting the first verdict aside, is the first question for this Court. *Railroad Co.* v. *Higgins*, 1 Pickle, 620. The trials had in the Court below, where more than one was had and bills of exceptions preserved, are considered here in the order of their occurrence. *Railroad* v. *Scott*, 3 Pick., 494.

We therefore proceed to the determination of the question as to correctness of the action of the Circuit Judge in setting aside the verdict of the jury, which was done manifestly because the Circuit Judge thought the amount given was too small. There can be no doubt that the Circuit Judge has the same power to set aside the verdict of the jury when the verdict is so inadequate as to indicate passion, prejudice, corruption, or unaccountable caprice, as he has to set aside similar verdicts so excessive as to indicate the same condition of mind on the part of the jury. *Campbell* v. *Thornburg*, 3 Head, 109; *Tennessee Coal, Iron & Railroad Co.* v. *Roddy*, 1 Pickle, 400.

It is not within the exercise of the legitimate power of the Circuit Judge to set aside verdicts as trifling or excessive, unless they appear to be the result of passion, prejudice, corruption, or capricious action on the part of the jury. It will be observed that this particular verdict was set aside by the Circuit Judge because, in his opinion, it was "against the evidence," and it is insisted that in such case he has exhibited dissatisfaction with the verdict, and his

dissatisfaction cannot be questioned if there were evidence pro and con considered by the jury, and by him in his action setting it aside. But the dissatisfaction of a Circuit Judge, which, appearing here, will invalidate a verdict, must be as to the finding upon an issue. If there was evidence pro and con, and an issue which was found in favor of one of the parties, and set aside at the instance of the other, the rule is applicable, but it has no application to the question of the amount. *Tennessee Coal, Iron & Railroad Co.* v. *Roddy*, 1 Pickle, 400; *Turner* v. *Turner*, 1 Pickle, 387.

It must be remembered that in this case the issues were found in favor of the plaintiff, and the verdict was set aside, not on the motion of the defendant, but on the motion of the plaintiff himself, who thought the amount was too small. The declaration, therefore, that it was "against the evidence," although in general terms, can have no other meaning than that the verdict was not sufficiently large, in the opinion of the Court. The Turner case, last referred to, though cited by counsel of defendant in error to the contrary, expressly decides that it was not the duty of the Circuit Judge to set aside such a verdict if he was dissatisfied with it. In that case there had been a judgment against the defendant, and the Court had expressed dissatisfaction with it, which was an expression of dissatisfaction as to the finding upon the issues. This Court reversed it expressly for this

reason, but, repeating the rule which had been announced in the Roddy case, and referring to that case, said: "We have held at this term that where, in an action for damages for tort, the Circuit Judge has expressed dissatisfaction as to the amount of the verdict, which he nevertheless let stand, we do not reverse, because, notwithstanding such dissatisfaction, it was his duty to let such verdict stand, unless it was so excessive as to indicate passion, prejudice, corruption, or other improper influences operating to produce it, of which we could judge from the record as well as he.   But the rule now asserted was emphasized in that case, that where the dissatisfaction is not with the amount, but the fact of the verdict, it will not be allowed to stand.   This distinction is perfectly obvious.   It is clear in this case that it was not dissatisfaction with the fact of the verdict, because the plaintiff, who moved to set it aside, had obtained it, and had obtained all he wished, except the amount he wished. And, therefore, it is clear that his dissatisfaction, and that of the Judge who allowed his motion, was with the amount and not the fact of the verdict. The case has to stand, therefore, or fall upon the right of the Circuit Judge to set this verdict aside because it had been the result of influences indicated. The record setting aside does not assume that, in the opinion of the Judge, it indicated either passion, prejudice, corruption, partiality, unaccountable caprice or any improper influence.   And if it can be

assumed that he thought so, and did not express that as the reason, which is the most favorable assumption to be taken to uphold the action of the Circuit Judge, then, as said in the Turner case, we can determine this question as well as he, and, as decided in the Higgins case referred to, it is our duty to do so. It was said in that case: "It was error in the Circuit Judge to set aside the verdict of a jury and grant a new trial, in an action for damages for a personal tort, on the ground that the amount awarded was insufficient and inadequate, there being no evidence to show passion, prejudice, or partiality on the part of the jury." It was further said that the effect of this Act of 1875 (which we are now considering), is simply to give to this Court the same power to reverse for error in granting new trials, and as to verdicts improperly set aside, that it has always had to reverse judgments rendered on improper verdicts. In that case a first verdict had been rendered for $500. There was a motion to set it aside, and this was done by the Circuit Judge upon the ground that "the verdict of the jury assessing plaintiff's damages at $500 was, and is, insufficient and inadequate for the loss of her husband." There was a second trial, and verdict for $5,000 with judgment, and defendants appealed. The first verdict was first considered. It was determined that it did not evince passion, prejudice, or corruption, authorizing the Court to have set it

aside, and judgment was rendered on it here, the last one being set aside as the result.

In the case before us, as already stated, there were three verdicts on the merits. There was one awarding one cent, there was another in favor of the defendant, and the last was but a verdict for $500. There is nothing in these results nor in the facts, to indicate that the jury which rendered the first verdict complained of, was influenced by either passion, prejudice, partiality, or corruption. The deceased brought on the attack; the defendant, from the evidence, was a slight, frail man, and while probably a violent and dangerous one, was not only not at the time engaged in any difficulty with the deceased, but was sitting in a store talking with some friends, leaning, or as the witness put it, "tilting back" in his chair with his back rather toward the entrance through which the deceased came, who, without warning, sprang upon him and threw him to the ground, and was violently beating and kicking him when they were separated. The deceased escaped from the man who was endeavoring to hold him and restrain the difficulty, made his way to the immediate vicinity of the defendant, and was there shot the first time. It is true he then retreated in the direction of his brother's store and was followed by defendant and shot several times subsequently. He appears to have provided himself with cartridges, for some were found in his pocket, although no one testified to the finding of any pis-

tol upon him. He may have been making his way to the store of his brother to arm himself and continue the difficulty, or merely as a matter of taking refuge. The jury was authorized to infer either. He seems to have been a much stronger man than the defendant, and the evidence indicates that he was a very bold man.

The plaintiff attempts to show that the defendant was a desperate and violent man, who went armed habitually, and yet the deceased did not hesitate to attack him with full knowledge of this character and condition of defendant. This certainly does not indicate any fear of defendant, and, being much the more powerful man, it is not unlikely that deceased would have renewed the conflict from a place of safety had he reached one. We have several times held that if one be but retiring from a difficulty with a view to gain an immediate advantage and continue it, this is not such a cessation of it as requires defendant to suspend his effort to defend himself against the original attack, good faith, of course, being presumed. The jury was, therefore, very well warranted in the assumption that the defendant had the right to expect deceased not to discontinue the conflict. Whether that be the absolutely correct inference or not, it is not material to inquire. It is sufficient if it be one fairly deducible from the evidence, and one which the jury (as they certainly did in this case) had. the right to draw. There could be no doubt that the plaintiff would be entitled to no damages for a re-

turn of violence by the defendant to the deceased after deceased had so violently and unexpectedly assailed him, unless defendant's resistance was wholly disproportioned to the violence offered to himself; and the jury had, therefore, the right, in considering that question, to draw the inference that the deceased, in making his immediate escape after his violent attack, was but resorting to the necessary means of placing himself in a better position and better preparing himself for the peculiar aspect of the difficulty which had resulted.

There was evidence tending to show that the deceased had threatened, if he could once get his hands on the defendant, that he would do him the greatest violence. There was evidence in the record indicating that the effect of the injuries inflicted on the defendant had been to daze him and impair, if not destroy, his consciousness for some little time. Under the circumstances—provocation and attack of the deceased, its violence and its danger to the defendant—even though he might not have been technically altogether in the right, so as to require that they render a verdict on the issues for him, the jury might very well have assumed that deceased, having provoked the difficulty, brought the result upon himself, and was not entitled to anything but nominal damages. In other words, that it should not be made a money-making matter to him or to those standing in the position of his representatives. The jury were authorized to say this, and this Court

can see no reason to put upon them, for saying it, the imputation that they acted in passion or from motives of partiality, prejudice, or corruption. In cases of this character it is peculiarly their province, in determining the issues, to fix the amount of damages and to fix it with its proper abatement on account of the contributing fault of the deceased. Their action is not controllable by the Court below or this Court, unless, as already stated, we can see that it was brought about under the improper influences indicated. In assault cases and some other cases of tort, the question of cost is expressly regulated by the amount of the verdict, and, where the jury find a verdict for an amount not exceeding $5, the cost is to be paid by the plaintiff, except an amount equal to the recovery. Code, § 3922; *Steffner* v. *Burton,* 3 Pickle, 135.

It was expressly contemplated in such cases that there would be necessary instances in which, technically, the defendant might be guilty of the offense charged, and yet he might not, for many reasons, be required to compensate the injured party in anything other than a nominal amount. This statute has been many years upon the statute books, has met the approval of the people, the profession, and the Courts, and has served a great purpose in authorizing the infliction of costs upon the undeserving litigant whom the jury shall find to have been in fault, or, for other reasons, not entitled to more compensation for

the technical fault of the defendant against whom they find the issues.

This statute is cited to show legislative adoption and approval of the policy of giving to juries the power to render the smallest verdict when the injury of the aggrieved party has been trivial, or when his own misconduct has been such as to require that his recovery should be so abated as to be practically nominal.

There were two errors in the second verdict fatal to its validity. One was the charge of the Court to the question as to the defendant's unconsciousness or insanity at the time of the commission of the offense. He applied to the facts of this case the general doctrine that an unconscious or an insane man, while not responsible for punitive damages for his torts, is nevertheless responsible for compensatory damages, as laid down in *Ward* v. *Conatser*, 4 Baxter, 64. This is the general rule, but if there were any unconsciousness or temporary insanity in the present case when the shooting was done, it was the result of the immediate act of the deceased, and would have been, in consequence, an excuse for any injury inflicted. It cannot be true that because an insane man is responsible for his acts, so far as making good any actual damage he inflicts is concerned, that the same is true when the complaint is made by the person, or representative of the person, who has immediately, by the infliction of unprovoked or unnecessary vio ence, produced the temporary insanity or

unconsciousness under which the defendant acted. This, it seems, is too clear for argument.

Another error was committed by the Court in allowing the counsel for the plaintiff to suggest and go into details respecting the former acquittal of the defendant on a criminal charge for the same offense. The defendant's counsel had said, in argument, that the defendant had been acquitted of this charge in a criminal trial. The Court, without objection from the other side, properly stopped the counsel from making any argument on this line, but he permitted plaintiff's counsel to argue elaborately this question of defendant's acquittal and go into details about how it was done, or might have been done. This was manifest error, and to the prejudice of defendant. For while the defendant cannot use his acquittal to his advantage, it would be gross injustice to allow it to be used by his civil adversary to his disadvantage. The Court, in this instance, should have done as he did in the other—peremptorily require the counsel to desist from such argument, with or without objection. It is the duty of the Court to protect litigants from improper argument, and to see that justice is dealt out fairly by the jury, uninfluenced by any improper considerations, among the most dangerous of which is the inflammatory argument of accomplished and adroit advocates before an untrained and inexperienced body of men called to decide questions of controversy upon law and evidence. As this last verdict must neces-

Jenkins *v.* Hankins.

sarily be vacated, as a consequence of sustaining the first, it is only material to mention these things as probably accounting for the last verdict, and consequently removing its supposed evidential effect, to indicate that the former verdict affirmed was in comparison slightly trivial.

It follows that the last judgment must be vacated, and proper judgment rendered here on the first verdict for one cent damages, with one cent cost, in favor of plaintiff (defendant in error), and judgment rendered in favor of defendant (plaintiff in error), for the remainder of the costs, in both Courts, under § 3922 of the Code, which we hold applies to all suits for damages for assault or assault and battery, whatever may have been the result, whether death or less injury. It is earnestly argued by plaintiff's counsel, that as death resulted in this case, the statute does not apply; but the statute makes no such exception, and we can make none. It applies to all cases where the action is predicated upon injury inflicted or damages sustained, through assault or assault and battery, whether it resulted in slight injury, seriously, or fatally.