## CITY OF NASHVILLE v. MRS. MAYME FOX,

### and

## CITY OF NASHVILLE v. JOHN T. FOX.

Middle Section.    February 11, 1928.

Petition for Certiorari denied by Supreme Court, April 14, 1928.

1. **Appeal and error. Where two bills of exceptions are presented on appeal the prior one will be reviewed first.**
   Where a new trial was granted by the trial court and a wayside bill of exceptions saved, and upon appeal of the second trial both bills of exceptions were presented to the appellate court, held the prior one must be reviewed first.

2. **Appeal and error. When wayside bill of exceptions has been filed as provided in section 4851, the appellate court will decide whether or not a new trial was properly granted.**
   Where a wayside bill of exceptions was filed as provided in section 4851, on appeal, the appellate court has the power to grant a new trial or to correct any errors of the circuit court in granting or refusing the same.

3. **Appeal and error. Where the record fails to show upon what ground the trial judge set aside the verdict it will be presumed that he exercised the discretion given him by law.**
   This court has repeatedly held that if the record fails to show the reasons for the trial judge's action, and no request is made to state his reasons, we will presume that he exercised the discretion given him by law to grant a new trial when he is dissatisfied with the verdict upon the facts. In the absence of reasons given, we will affirm the action of the court below.

4. **Municipal corporations. Letters held sufficient notice to a city in compliance with the Act of 1913.**
   In an action to recover damages for personal injuries where certain letters were written and received by the city, held that if notice was necessary they constituted sufficient notice to the city in compliance with the provisions of the Act of 1913.

5. **Municipal corporations. A city is not entitled to notice where the injury is caused by a defect created by the city.**
   In an action to recover damages for personal injuries alleged to have been sustained by a fall caused by a defect in the floor or payment of the market house of the City of Nashville, held that the evidence showed that the defect was created by the city and therefore the city was not entitled to notice of the intention to file the suit.

6. **Municipal corporations. A municipal corporation maintaining a market house is liable for negligence in connection therewith.**
   When a municipal corporation exercises as a private corporation private franchise powers and privileges which belong to it for its immediate corporate benefit, or deals with property held by it for its corporate ad-

vantage, gain or emolument though inuring ultimately to the benefit of the general public it becomes liable precisely as is an individual for the negligent exercise of such power.

7. **Municipal corporations. Negligence. Master and servant. A municipal corporation is liable for the actions of its servant, while operating a market.**

A municipal corporation is, upon the principle of respondeat superior, liable for the negligence of its officers and agents in the exercise of that class of powers conferred upon it for its own corporate advantage and immediate emolument; powers conferred not solely for public purposes, not pertaining to its functions as a local government in which it exercises a portion of the sovereign power of the State.

8. **Municipal corporations. Negligence. Municipal corporation operating a market house is liable for its negligent acts the same as an individual owner.**

Where a municipal corporation is operating a market house for profit, held that the liability of the municipality is that of an individual owner, as a landlord, or a merchant maintaining a store, inviting the public to come upon the premises.

9. **Landlord and tenant. Proprietor of a store is bound to keep it in reasonably safe condition for all persons who may lawfully be there.**

The rule is universal that the proprietor of a store or other place open to the public, is bound to keep it in a reasonably safe condition for all persons who may lawfully be there, and whether or not the required care has been exercised is generally a question of fact for the jury.

10. **Evidence. Negligence. Evidence of conditions before or after an accident may be received where it is shown that the condition remained unchanged down to the occurrence of the injury.**

In an action to recover damages for injuries sustained by falling because of a hole in the floor of a market house where evidence was offered of other people stumbling over the same hole, held the evidence was admissible when it was shown that the hole was in the same condition at both times.

11. **Damages. $3500 held not excessive for injuries sustained in fall.**

In view of the evidence in regard to the injuries sustained, held that thirty-five hundred dollars was not an excessive verdict.

12. **Damages. The court will not interfere with damages allowed by jury unless it is such as to evince passion or prejudice.** .

In actions for personal injuries it is always the duty of the jury, in the first instance, to determine the amount of compensatory damages it will allow; and the court is authorized to interfere on the ground of excessiveness only when the allowance is so large as to evince passion, prejudice, partiality, caprice or corruption on the part of the jury.

Appeal in Error from Circuit Court, Davidson County; Hon. A. B. Neil, Judge.

Affirmed.

Charles Gilbert, of Nashville, for plaintiff in error.

Norman Farrell, Avery Handly and E. J. Smith, all of Nashville, for defendant in error.

DEWITT, J.   On November 26, 1924, Mrs. Mayme Fox was seriously injured by a fall in the market house in the City of Nashville.   She brought suit against the City of Nashville, a municipal corporation, for damages for the personal injuries sustained

by her, and her husband John T. Fox also brought suit against the City of Nashville for loss of services of his wife and expenses incurred by him as the result of the personal injuries to his wife. These suits were based upon alleged negligence of the city in maintaining its market house in a defective condition, in that the concrete floor contained a hole, which was known to the city or should have been known to it by the exercise of reasonable care, and not known to Mrs. Fox, nor discoverable by her in the exercise of ordinary care; in which hole or depression she stepped while walking when she was engaged in making some purchases from merchants in said market house. It was averred in the declaration that the City of Nashville was authorized and empowered under its charter to establish and maintain a market house, and that in pursuance thereof said city leased to various persons spaces in the market house to the end that such occupants might deal with the general public, that it was the duty of the City of Nashville, in view of said facts and circumstances, to use ordinary and reasonable care to provide safe passages or walkways in the market house to be used by any and all persons who desired to transact business with the occupants thereof; and that it had violated said duty in allowing said hole to exist in the floor. The city interposed a plea of not guilty to each declaration. The suits were twice tried together. On the first trial the jury awarded a verdict for $800 to Mrs. Fox and a verdict of $400 to her husband. Each of the plaintiffs moved for a new trial on the single ground that the damages awarded were inadequate on the facts of the case, so inadequate as to evince passion, prejudice and caprice on the part of the jury. The court granted said motions on the ground that the verdicts were inadequate. Upon the second trial the jury awarded to Mrs. Fox a verdict for $5000 and to Mr. Fox a verdict for $1500. The City of Nashville moved for a new trial, which motion the court overruled, except that the court suggested a remittitur of $1500 in the case of Mrs. Fox, which remittitur was accepted under protest, but no complaint is made of the same in this court. The judgments complained of are therefore one for $3500 in favor of Mrs. Fox and one for $1500 in favor of Mr. Fox.

At the close of the first trial the city's motion for a new trial was overruled and it prayed an appeal, which was refused by the trial judge, but the city filed a wayside bill of exceptions. The city has appealed in the nature of a writ of error and it insists in this court, among other things, that the trial judge erred in awarding to the plaintiffs a new trial, erred in refusing to grant peremptory instructions in favor of the city upon the first trial; and erred in refusing to grant a new trial after the second trial.

Having before us two bills of exceptions, the case stands for examination first upon the prior one. Baugh v. Railroad, 98 Tenn., 119, 38 S. W., 433.

The first complaint in this court to be considered is that the court erred in granting a new trial to the plaintiffs on the ground that the verdict of the jury was so inadequate as to evince passion, prejudice or caprice.

Applying the rules of practice followed in Chesapeake, Ohio & S. W. Railroad Co. v. Higgins, 85 Tenn., 620, 4 S. W., 47, we must, in disposing of this assignment of error, consider the whole question of liability of the city in this case. Prior to the enactment of chapter 106 of the Acts of 1875, Shannon's Annotated Code, sections 4851-4852, there was a conflict in the decisions of the Supreme Court upon the power of the appellate court to revise the grant of new trials by trial judges. Section 4852 provides that when a wayside bill of exceptions has been filed, as provided in section 4851, it shall be lawful for the appellant in such case to assign for error that the judge in the court below improperly granted or refused a new trial therein, and the appellate court shall have the power to grant new trials, or to correct any errors of the circuit court in granting or refusing the same; and it follows from this that the order granting a new trial will be considered on appeal from a final judgment. Baugh v. Railroad, supra; Jenkins v. Hankins 98 Tenn., 545, 41 S. W., 1028; Railroad v. Ray, 124 Tenn., 28, 134 S. W., 858. In Railroad v. Scott, 87 Tenn., 494, 11 S. W., 317, the court said:

"If the trial judge has committed no error in allowing such new trial (and very much is necessarily left to his discretion, especially where he is dissatisfied with the verdict), this court will refuse to disturb his action thereon, and will pass to the consideration of the record of the second trial. If, on the other hand, the trial judge has committed manifest error in setting aside the first verdict, this court will enter judgment on such verdict, without looking to the record of the succeeding trial or trials."

In Railroad v. Higgins, supra, on the first trial there was a verdict for plaintiff for $500, which, on her motion, was set aside on the ground of the insufficiency of such damages for the loss of her husband. On the second trial there was a verdict and judgment for $5000. The facts shown were substantially the same on both trials. The Supreme Court, exercising its power under the statute, set aside the judgment for $5000 and rendered judgment for $500 on the ground that the verdict of the jury for $500 did not evince passion, prejudice or corruption authorizing the court to set it aside; that if it showed feeling at all, it was sympathy for the

widow who sued. But this conclusion was based upon the very weak case made out for the plaintiff.

In Railway Co. v. Lee, 90 Tenn., 570, 18 S. W., 268, referring to the action of the trial judge in granting a new trial, the court said:

"The record fails to show upon what ground the trial judge set aside the verdict, or that he was requested by counsel to state his reasons therefor. This court has repeatedly held that if the record fails to show the reasons for his action, and no request is made to state his reasons, we will presume that he exercised the discretion given him by law to grant a new trial when he is dissatisfied with the verdict upon the facts. In the absence of reasons given, we will affirm the action of the court below in granting a new trial upon the first trial of this case."

In Burchell v. Street Railway Company, 2 Higgins, 576, 584, the Court of Civil Appeals speaking through Judge Higgins, said:

"The Tennessee cases which discuss the power of the court to grant new trials, or set aside verdicts on account of the amount of the verdict, are numerous. They have been so often cited that it is useless to set them down here, suffice it to say that the court is thoroughly familiar with every one of them. The cases more nearly in point are those of Turner v. Turner, 85 Tenn., 387; Ry. Co. v. Higgins, 85 Tenn., 620; Jenkins v. Hankins, 98 Tenn., 548; Coal Co. v. Roddy, 85 Tenn., 400. See, also, Vaulx v. Ry., 120 Tenn., 322.

"It must be conceded that courts have the same power to set aside verdicts upon the ground of inadequacy as fully as in cases where they are excessive. See cases, supra; 29 Cyc., 847. In passing upon the question of inadequacy of the verdict the same rule or test must be applied. The court must be satisfied that the smallness of the verdict was the result of passion, prejudice or unaccountable caprice or corruption upon the part of the jurors. The court should be convinced that the jurors failed, in computing the amount of recovery, to take into consideration the elements of recovery, and that they blindly ignored the rights of the plaintiff, or capriciously declined to award him that to which from every standpoint of justice he was entitled; or that the jurors, out of favor for one side, or of prejudice, or for some extraneous and unwarranted consideration, hit upon a sum which amounts to a denial of justice."

For reasons which will be hereinafter set forth, we are of the opinion that the evidence materially tending to support the verdict, adduced upon each trial of these cases, makes out a clear case

6 T. A.—42.

of liability on the part of the City of Nashville to both plaintiffs; and that there were no errors committed upon either trial of these cases. These matters will be carefully discussed later in the course of this opinion. We are further of the opinion that the trial judge did not abuse his discretion in awarding a new trial on account of the inadequacy of the verdicts rendered upon the first trial; in other words, there was abundant evidence supporting the conclusion of the trial judge that the verdicts were inadequate; that the jurors failed in computing the amount of recovery to take into consideration the elements of recovery; that they completely ignored the rights of the plaintiffs, or capriciously declined to award to them that to which they were justly entitled.

The plaintiff, Mrs. Fox was forty-four years of age when injured. She had been accustomed to doing all of the domestic labor in her home, including her own cooking, washing, sewing and housecleaning. When she fell she landed upon her shoulder, the knob on the top of the humerus in her arm was fractured at a point where it functions in the shoulder socket like a ball and socket joint. The X-ray pictures of the fracture showed not only the fracture of the knob of the humerus in the joint, but showed how it was actually crushed down. Doctor Floyd who took these pictures said; "her bone was fractured below there, the anatomical neck, involving depressions around and showing a crushed fracture driven in." X-ray pictures made about six months after the accident showed a permanent deformity at that place. Mrs. Fox suffered great agony from these injuries for weeks and months. She suffered great pain when the arm was set. She was long unable to sleep at night without the use of opiates. She had to wear a rigid metal brace for six weeks. After the arm was taken out of this apparatus, she carried it in a sling for four or five weeks longer. She could do very little for herself. She had to endure great pain and suffering after her arm came out of the sling from the efforts of the doctors by manual manipulation to try and get some motion in it. She was under the surgeons' care from November, 1924 to May 4, 1925, having to go frequently to their office for treatment. She is unable, after the lapse of two and one-half years, to raise her arm up straight. Doctors Haggard and Floyd, surgeons, both testified that she would never have good motion again in her arm. They described in connection with this statement the difference that exists between the fracture of an arm at a joint, and its fracure at some point between joints. Both of them said that the arm was as well as it would ever be and that her injury was permanent. Both of them testified that an injury of this kind is attended with inflammation and causes great, constant and lasting pain.

Mrs. Fox, after describing the pain, sleeplessness, and nervousness from which she suffered for many weeks, testified that she could not raise her arm as she formerly could, that she could not stand for five minutes to hold it as high as she could raise it, and that it was almost a year after the injury before she could do half of the household work that she had formerly done.

There was evidence abundantly tending to show that Mr. Fox incurred, for medical and surgical services, servants hire and other expenses as a result of the said injuries to Mrs. Fox, expense amounting to $808; that he further lost the society and comfort of his wife during her prolonged disability and illness; that by reason of her permanent disability, the lack of a full and free movement of her arm, he would have to employ help during the future years to assist her in her house work, all of which she did before her accident. For all of these injuries and sufferings Mrs. Fox was allowed only $800 by the first jury, and Mr. Fox was allowed by that jury a sum equal to only one-half of the expenses which he actually incurred, without anything for loss of society of his wife, or for servant's hire in the future."

For all of these reasons we are of the opinion that the trial judge was not in error in granting a new trial for the insufficiency and inadequacy of these verdicts, and the assignments of error predicated upon this action of the trial judge are overruled.

Upon both trials the facts shown were substantially the same, but upon the second trial the city introduced three additional witnesses. These witnesses gave testimony which was contradicted directly or indirectly by other witnesses. There are twenty-one assignments of error made by the city as to the verdict and judgment rendered on the second trial. Nearly all of these assignments of error are also made as to the verdict and judgment rendered on the first trial. The first three assignments set forth the proposition that there is no evidence to sustain the verdict. Eight of the other assignments are to the effect that the trial judge should have directed a verdict for the defendant. Most of these assignments are predicated upon the theory that the hole in question was not of sufficient size and gravity to constitute an actionable defect.

First, it is insisted that the plaintiffs failed to show that the market house in which the accident occurred, was owned and maintained by the City of Nashville. Mrs. Fox testified that she was hurt "in the city market house here on the Square." Other witnesses testified that the accident occurred in the city market house and that the hole was in the floor of said market house; and that merchants in the market house rented their stalls from the city; that the floor of said market house was swept by employees of the city; that the city lighted the market house, and that the hole

was made by city employees in repairing a sewer under the floor. All of this testimony was given by plaintiffs' witnesses, and from it the jury could reasonably infer that the market house was owned and maintained by the City of Nashville.

It is also insisted that there was no proof in evidence that the plaintiff John T. Fox had given to the City of Nashville the written notice required by chapter 55 of the Acts of 1913. It appears that on the first trial it was stipulated that letters written by both Mr. Fox and Mrs. Fox, set forth in the declarations, had been received by the City of Nashville. On the second trial it was again so stipulated. These letters appearing in the declarations constituted full compliance with the provisions of said Act of 1913. We are also of the opinion that the city was not entitled to notice of the injury, under said Act of 1913, because the undisputed evidence shows that the city created the defect in the floor or pavement of the market house which caused the injury. McCarty v. Town of Mountain View, 136 Tenn., 133, 188 S. W., 595; Hughes v. Nashville, 137 Tenn., 177, 192 S. W., 916; Elrod v. Town of Franklin, 140 Tenn., 228, 204 S. W., 298.

Upon each trial evidence was adduced showing that the hole was created about a year before the injury to Mrs. Fox; that during all of that time it had existed in that condition; that it was made by employees of the City of Nashville while opening up a sewer under the pavement; and that the city's market master (who was deceased at the time of the trials) had had his attention called to the hole and the danger therefrom, had promised to have it repaired but had failed to do so.

There was also evidence of several witnesses to the effect that the hole was from one to two inches deep and seven to eight inches in diameter.

On the afternoon of November 27, 1924 the weather was cold, the doors of the market house were closed and very few of the stalls were open for business. The plaintiff, Mrs. Fox had purchased at one stall a dozen eggs which she had in a bag, in one hand. In the other hand she had a small purse, a beaded bag. She stopped at another stall with a view of buying some meat, but she did not find what she wanted there. She thereupon turned from the aisle in front of that stall to go west and in turning to go into another aisle, after having taken about three steps, her foot went down into the hole, and she lost her balance. On the first trial she said that she tried to recover her balance but did not succeed and fell forward, possibly ten or fifteen feet and struck her shoulder on the floor. She said when she stepped into the hole she was thrown forward and her shoulder was broken by the fall. Her testimony on the second trial was substantially the same, except that she said

further that the heel of her shoe turned when she stepped into the hole and she was thrown on the floor. She testified that she did not see the hole, before she stepped into it. The city maintained incandescent lights which were burning that afternoon, but Mrs. Fox testified that the market house was poorly lighted. A number of other witnesses testified in substantial corroboration of Mrs. Fox as to the size and location of the hole, and the manner in which she sustained her injuries by stepping into the hole and losing her balance, and being thrown forward on the pavement.

From these facts the jury could in our opinion, very reasonably infer that the plaintiff Mrs. Fox was not guilty of contributory negligence proximately causing her injury, and that the City of Nashville was guilty of the negligence which proximately resulted in her injuries.

The proposition that in maintaining a market house and renting stalls therein to individuals dealing in meats and provisions, the municipality was performing a governmental purpose, and therefore is not liable for negligence, is contrary to the current of authority. 19 R. C. L., 1134; 43 C. J., 930; McQuillan on Municipal Corporations, secs. 2674, 2676; Dillon on Municipal Corporations, sec. 966. When a municipal corporation exercises as a private corporation private franchise powers and privileges which belong to it for its immediate corporate, benefit, or deals with property held by it for its corporate advantage, gain or emolument, though inuring ultimately to the benefit of the general public, it becomes liable precisely as is an individual for the negligent exercise of such powers. Saulman v. Mayor and City Council of Nashville, 137 Tenn., 427, 175 S. W., 532, Ann. Cas. 1916C, 1254, L. R. A. 1915E, 316; Conelly v. Nashville, 100 Tenn., 262, 46 S. W., 565; Memphis v. Kimbrough, 12 Heisk., 134; 19 L. R. A., 452 and note. A municipal corporation is, upon the principle of respondent superior, liable for the negligence of its officers and agents in the exercise of that class of powers conferred upon it for its own corporate advantage and immediate emolument; powers conferred not solely for public purposes, not pertaining to its functions as a local government in which it exercises a portion of the sovereign power of the State. 9 Tenn. Encycl. Dig., 284, and cases there cited. It is universally held that the erection and maintenance of market places is a private or corporate function, not a governmental one. McQuillan on Municipal Corporations, sec. 2676; 19 R. C. L., 1134; 28 Cyc., 1311; Savannah v. Cullens, 38 Ga., 334, 95 Am. Dec., 398; Barron v. Detroit, 94 Mich., 601, 54 N. W., 273, 34 A. S. R., 366; Suffolk v. Parker, 79 Va., 660, 52 Am. St. Rep., 640; Weymouth v. New Orleans, 40 La. Ann., 344, 4 So., 218; Baltimore v. Brannon, 14 Md., 227. It is nevertheless insisted that the defect in question, the hole in the floor, was a trivial defect which

was not actionable; but the rule that slight holes or depressions which are not in the nature of traps, and from which danger could not be reasonably anticipated are not defects for which an action will lie, applies in cases of defects in streets or sidewalks. 43 C. J., 1014. This rule was applied in Louvier v. City of Nashville, 1 Tenn. App. Rep., 401, as to injury occurring from stepping into a hole in a street crossing. In Elrod v. Town of Franklin, 140 Tenn., 228, 204 S. W., 298, a judgment for plaintiff for damages for injuries from stumbling over a metallic curb box inside of the grade line of a sidewalk and protruding above the surface of the sidewalk from two or three inches, was affirmed. In the Louvier case the jury returned a verdict for the defendant. In each case it was a question for the jury to determine whether, under all the circumstances, the defect was trivial or was one which the danger could reasonably be anticipated; and whether or not the plaintiff was guilty of contributory negligence barring recovery.

It follows, therefore, that the liability of the municipality is that of an individual owner, as a landlord, or a merchant maintaining a store, inviting the public to come upon the premises. In Savannah v. Cullens, supra, the plaintiff was injured by falling into a hole, or inequality, in the pavement of a public market of the City of Savannah. It was about a foot square and from four to six inches deep. The city owned the market and rented the stalls. The plaintiff had made a purchase at a stall, and in turning away stepped into the hole and fell, breaking the neck of her thigh bone and permanently crippling her. Upon the subject of the liability of the city the Supreme Court of Georgia said:

"On the other hand the market was the property of the corporation, from which it derived a revenue in the way of rent. Why was it not just as much bound to keep that safe as a merchant is the floor of his store? To keep the market in a safe condition, it being the property of and used by the city for its revenues, was a private duty. It was the duty of a property holder and the city stands in this respect upon the same footing as an individual. It must use its own so as not to hurt its neighbors.

"Whatever was the condition of the streets, it was its duty not to have a trap on its private property by which a citizen was injured. We hold, therefore, that the judge was right in his charge to the jury; that the market stood on a different footing from the streets and that the excuse presented did not apply to it."

The rule is universal that the proprietor of a store or other place open to the public, is bound to keep it in a reasonably safe condition for all persons who may lawfully be there, and whether or not the

required care has been exercised is generally a question of fact for the jury. The City of Nashville maintains this market in its corporate and individual capacity, and its liability must be tested by this same rule which applies to individual proprietors. There is a long line of cases in the reports in which these rules were applied. 29 Cyc., 637; Blooner v. Snellenburg, 221 Pa., 25, 21 L. R. A. N. S., 464; Kern v. Atlantic & Pacific Tea Co., 241 N. Y., 600; Schnatterer v. Banbenger, (N. J.) Ann. Cas., 1912D, 139; Graham v. Banland, 97 App. Div., 141; Polinske v. Lit Bros., 18 P. Sup. Ct., 474; Brown v. Milligan, 33 Pa. Sup. Ct., 244; Dent v. Grim, 65 App. Div., 81; Ginns v. Sheren Co., 219 Mass., 18; Bennett v. Jordan Marsh Co., 216 Mass., 550; Frost v. McCarthy, 200 Mass., 445; Elrod v. Franklin, supra.

It is insisted that the trial judge erred in admitting testimony to the effect that another person had stumbled in this depression sometime after Mrs. Fox was injured, without requiring proof of the conditions and surrounding circumstances. But the rule relied upon in support of this insistence is that such testimony is not admissible for the purpose of showing notice or knowledge on the part of the defendant of the existence of the defective or dangerous condition causing the injury. The evidence shows that the city already had notice of the existence of this hole in the floor; and the admission of this evidence as to another person subsequently stumbling into the hole would, if erroneous, constitute harmless error. There was testimony that the hole was in the same condition as it was in when Mrs. Fox fell. In Railroad v. Howard, 112 Tenn., 106, 78 S. W., 1098, it was held that evidence of conditions before or after the accident may be received where it is also shown that the conditions testified to remained unchanged down to the occurrence of the injuries. We do not think that there is any merit in this assignment of error.

It is also insisted that the trial judge erred in instructing the jury as shown in the last sentence of the following excerpt from his charge:

"If you find from a preponderance of all the evidence that prior to the date on which Mrs. Fox sustained her injury, that the existence of the alleged defects in the floor had been reported to the city market master, then, I charge you that the city had actual notice of such alleged defect. While such notice is not conclusive evidence that it was an unsafe or dangerous defect, you should consider the notice so given to the market master in determining the nature and character of the defect. Any opinion expressed by those claiming to have given notice that the said defect was unsafe or dangerous, cannot be considered by the jury, because that is a question for the jury to decide from all the evidence."

This instruction was given upon both trials. Upon the first trial, without objection, the renters of stalls had been allowed to tell of

their notice to the market master and their opinion that the place was dangerous and somebody might get hurt. The trial judge, as a matter of protection to the city, evidently charged the jury that they must not consider these things. This was very proper. The trial judge read to the jury on the second trial the same charge given on the first trial, with some minor changes. Upon the second trial all testimony of the witnesses as to whether the depression was safe or dangerous was excluded by the court. Therefore as there was no evidence before the jury upon which this instruction complained of could operate, it was superfluous and therefore harmless. We are unable to appreciate the contention of the plaintiff in error that this superfluous instruction was highly prejudicial to it because it left in the minds of the jury the impression that if such witnesses had been permitted to testify as to their opinion of the defect, they would have stated it to be unsafe and dangerous. The jury, if they had such an impression, had also a positive instruction from the court that they must not consider such an impression, and that they must decide the question whether or not the defect was unsafe and dangerous.

The assignments of error raising the remaining questions before this court, complain of the refusal of the trial judge to instruct the jury upon requests submitted by counsel for plaintiff in error. One of these requests contains the proposition that the degree of care required of the city is only that of ordinary care, under the facts, whether the accident occurred on a sidewalk or street, or on the walkway of the market house, and this degree of care placed on the city is no higher or greater because the evidence shows that the city may collect rents from the lessees of stalls in the market house. So far as this request contained a correct instruction, it had already been given in the main charge to the jury.

The other intruction requested was in substance that if the walkway or aisle in the market house was in a reasonably safe condition for public use, and if the plaintiff Mrs. Fox was at the time exercising reasonable care and caution for her own safety, then the occurrence must be deemed an accident or misfortune, for which the city is not liable. It is insisted that nowhere in the charge did the court state that if the floor was in a reasonably safe condition and that if Mrs. Fox was using reasonable care for her own safety in the use of the floor and was injured, the city would not be liable.

A careful examination of the charge of the court discloses the fact that the trial judge told the jury that it was the duty of the city to keep the floors or passage ways in a reasonably safe condition; that it was not required to have them in a perfect condition; that the city is not in any sense an insurer of the safety of the floors or of the safety of the aisles in its market house, and it is not required to repair every kind of break or depression in the floors and aisles; that it is re-

quired to repair such breaks, defects and depressions in the concrete floors and aisles as might reasonably be deemed unsafe by a person of ordinary care and prudence. The trial judge further charged the jury that the mere fact that there was an accident is not in itself sufficient to warrant the conclusion that the defect was dangerous; that they should consider all the evidence as to the alleged defect, and decide in the light of reason and sound judgment whether or not it was such defect as a person of ordinary care and prudence would reasonably anticipate that an accident, such as that which occurred, would or might happen as the proximate result of such defect. He further charged the jury that the plaintiff was not required, in walking in the aisle of the market house, to keep her eyes fixed on the floor at all times, but was required to use ordinary care. The proposition that both plaintiff and defendant were required to use ordinary care, was clearly set forth in many portions of the charge. We think therefore that the trial judge did not commit error in refusing to give in instruction to the jury the request so submitted by defendant.

It is further insisted that the judgment should be reversed on the ground that the verdict of the jury in each of these cases was so excessive as to indicate passion, prejudice and caprice on its part.

We have heretofore set forth the nature and extent of the injuries suffered by Mrs. Fox, and the expense and loss incurred by her husband, Mr. Fox. The trial judge was of the opinion that the sum of $5000 for Mrs. Fox was excessive and by suggesting remittitur he reduced it to $3500. It is insisted that the injury to Mrs. Fox was nothing more than a broken arm, that the fracture was at the junction of the shaft bone with what is termed the knob or head of the bone; that the fracture was in the arm bone and not the joint. It is admitted that there was a limitation of motion of the left arm to the extent that she could not do very well those things that required the elevation of the arm, that the higher it was elevated the more interference she had; but it is insisted that she can do anything that does not require the elevation of the arm very much. It is further insisted that there was a complete union of the fractured bone; that the trouble with Mrs. Fox's arm is not with the bone, but with the soft tissues which were injured and the inability of the tissues to perform their normal function, restricting the motion of the left arm upwards.

In actions for personal injuries it is always the duty of the jury, in the first instance, to determine the amount of compensatory damages it will allow; and the court is authorized to interfere on the ground of excessiveness only when the allowance is so large as to evince passion, prejudice, partiality, caprice or corruption on the part of the jury. Tenn. Coal etc. Co. v. Roddy, 85 Tenn., 400, 5 S. W., 286;

American Lead Pencil Co. v. Davis, 108 Tenn., 251, 66 S. W., 1129; Packet Co. v. Hobbs, 105 Tenn., 30, 58 S. W., 278. The trial judge, in an action for personal injuries, who saw the plaintiff and heard her injuries described, might infer passion, prejudice or caprice on the part of the jury from an excessive verdict alone. Grant v. Railroad, 129 Tenn., 398, 165 S. W., 963. In view of the nature and extent of the injuries and the suffering, and perhaps permanent impairment of a full use of the plaintiff's arm, we are unable to see that the award of $3500 is so excessive as to indicate passion, prejudice or caprice. See Crescent Amusement Co. v. Byrne, 3 Tenn. App. Rep., 425. If the jury had returned a verdict for only $3500 we would not be able to see anything that would indicate passion, caprice or prejudice on their part.

We are also unable to see in an award of $1500 to Mr. Fox, in view of all of the expenses incurred, the loss of services of his wife, and the probable future expense, an evidence of passion, prejudice or caprice on the part of the jury. It results therefore that the assignment of error involving these propositions is overruled. We have thus dealt with all the propositions embodied in the twenty-one assignments of error, made in behalf of the City of Nashville. We are unable to sustain any of them, and for the reasons given they are overruled. The judgment in each of these cases is affirmed. A judgment will be entered in the case of Mrs. Fox v. City of Nashville, for $3500, with interest from date of the judgment below, and in the case of Mr. Fox v. City of Nashville, judgment will be entered for $1500, with interest from the date of judgment below. The costs of the appeal in each of these cases will be adjudged against the plaintiff in error and the surety on its appeal bond.

Faw, P. J., and Crownover, J., concur.