Chesapeake, Ohio & Southwestern Railroad Company *v.* Higgins.

CHESAPEAKE, OHIO & SOUTHWESTERN RAILROAD COMPANY *v.* HIGGINS.

*(Jackson.*    April 8th, 1887.)

1. ACTIONS. *By non-resident widow for the killing of her husband in this State.*

An action lies, under the statutes of this State, in favor of a *non-resident widow*, against a railroad company, by whose negligence her husband has been killed *in this State*, while in the employ of such railroad company; although the deceased was a non-resident, and entered the service of such company outside the State, and the greater part of defendant's road laid beyond the limits of this State.

(See Code, §§ 3130–3132 (M. & V.) ; §§ 2291, 2292 (T. & S.)

2. NEW TRIAL. *Act of* 1875, *Ch.* 106, *construed. Order granting. Bill of exceptions.*

When under the Act of 1875, Ch. 106, a bill of exceptions is taken to the judgment of the Circuit Court *granting a new trial*, and afterward, upon another trial, a different judgment is rendered and appealed from, this Court, in passing upon the first judgment *granting a new trial*, will ignore all subsequent proceedings, and apply the same rules and principles as if the appeal were taken from a judgment overruling the motion for new trial.

Cited: Act of 1875, Ch. 106.

Chesapeake, Ohio & Southwestern Railroad Company *v.* Higgins.

3. SAME. *Inadequate verdicts in cases of personal torts.*

And, therefore, it was error for the Circuit Judge to set aside the verdict of a jury and grant a new trial, in an action for damage for a personal tort, on the ground that the amount awarded was "insufficient and inadequate," there being no evidence to show passion, prejudice, or partiality on the part of the jury.

(See Railroad Company *v.* Roddy, *ante,* p. 400; and Turner *v.* Turner, *ante,* p. 387.)

---

### FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. J. O. PIERCE, J.

Action by a *non-resident* widow against a railroad company for the negligent killing of her husband, *in this State.*

A trial was had, and verdict returned for $500 damages, which, on motion of the plaintiff below, was set aside as "insufficient and inadequate" in amount. Bill of exceptions was taken to this action of the Court, under Act of 1875, Ch. 106.

On a subsequent trial there was verdict and judgment in favor of plaintiff for $5,000.

The railroad company appealed from the latter judgment.

HOLMES CUMMINS for Railroad Company.

WRIGHT & FOLKES for Higgins.

TURNEY, C. J. The widow of Martin Higgins sues the railroad company for damages resulting

from the loss of his life in a wreck of its engine and train.

The declaration is demurred to on two grounds:

*First* — Higgins, as engineer, knew the condition of his machine, and continued in its use willingly and without objection, assuming the risk incident to such defects.

*Second*—No cause of action is stated.

Sufficient averments appear in the declaration to overrule the demurrer.

The defendant pleaded not guilty, and that Martin Higgins resided in Kentucky at and prior to his death; that plaintiff resided there, and the greater part of defendant's road laid in that State; that the contract of employment of Higgins was made in that State, the engine placed in his control there, the breach of duty, if any, had occurred there, and, therefore, plaintiff could not sue in Tennessee.

The accident occurred on that part of the road lying in Tennessee where the road must be operated under its Tennessee charter and the laws of this State. The residence of the deceased or of the plaintiff will not change the rule; she is as well comprehended in our statute as if a citizen of the State.

There were several trials of the cause in the Circuit Court. In one there was a verdict for plaintiff for $500, which, on her motion, was set aside, her ground and the reason of the Court being: "The verdict of the jury assessing plaintiff's

damages at $500 was and is insufficient and inadequate for the loss of her husband."

The motion to set aside was resisted, and a bill of exceptions was presented under statute providing:

"Where a motion for a new trial shall be granted or refused, either party may except to the decision of the Court, and may reduce to writing the reasons offered for said new trial, together with the substance of the evidence in the case; also the decision of the Court on said motion; and it shall be the duty of the Judge before whom such motion is made to allow and sign the same; and such bill of exceptions shall be a part of the record in the case."

"It shall be lawful for the appellant in such case to assign for error that the Judge in the court below improperly granted or refused a new trial therein; and the Supreme Court shall have power to grant new trials, or to correct any errors of the Circuit Court in granting or refusing the same." Acts of 1875, Ch. 106.

The effect of this statute is simply to give to this Court the same power to reverse for error in granting new trials and enforce verdicts improperly set aside that it has always had to reverse judgments rendered upon improper verdicts.

The consideration of the question in the record arising under this statute is just the same as it would have been had the Court refused to set aside the verdict at the instance of the plaintiff, the defendant resisting, and the plaintiff had ap-

pealed. To be more explicit, we try the case upon the first record just as if the case had come to us on appeal of plaintiff. Ignoring the fact that the verdict and judgment on a new trial was $5,000, and looking alone to the fact that the verdict for $500 is before us, we look to the facts to ascertain whether the verdict was authorized.

The facts are substantially the same on both trials, and show that deceased was a capable, skillful, and experienced locomotive engineer, and accustomed to running the engine by the wreck of which he lost his life; that he ran it from Louisville to Memphis, drawing a pay-car, and on its return from Memphis as far as Brighton, a distance of thirty or thirty-two miles, near which latter point he was derailed by collision with a bull, which was seen on the track only a very few seconds before collision, and not in time to check the train, and (as he said to several parties) when it was impossible to prevent an accident. En route from Louisville he complained of a want of air to his brakes, and at several points dismounted and examined the engine, and never alluded to any other defect in his engine. At Memphis he thought so little of this defect that he made no mention of it until asked by a master mechanic if all was right with his engine, when he called attention to the trouble, which was remedied. He then tested it and said it was "all right." On the same evening, as he left Memphis and was passing the mechanic who had repaired the engine, he "shouted"

to him it was "all right." During the several days he lived after receiving injuries he is not shown to have complained of any defect whatever in the engine, but in several conversations he attributed the accident, as we have already seen, to the impossibility to so check his speed as to prevent the accident in the short time after discovering the animal on the track. These facts are in nowise controverted.

It is argued that the pilot or cow-catcher was loose and insufficient, and there is some proof to that effect; but the large preponderance of the evidence is to the reverse. Several engineers and mechanics, who profess to speak from personal observation and knowledge, show there was no defect; and it is clear that the defect complained of —looseness and closeness to the track of the pilot —was not the cause of the derailment. It did not hang upon an obstruction. It threw the animal into the air; the animal fell and was passed under the engine and rolled into a ditch, the engine passing on the road some distance before leaving the track, when it fell or turned over on its side, the pilot remaining fast to the engine, with part of it driven in the ground.

Experts, acquainted with the engine, and who had run it and repaired it, prove that it was a safe one and in good condition, and that the defects complained of did not increase the danger, but only decreased the capacity of the engine to draw. This latter is proven by a number of experienced

mechanics and locomotive engineers disconnected with defendant company, as also that the pilot was properly attached. The truth of these facts is put beyond doubt by the conduct and statement of Higgins, the competent, intelligent, and faithful engineer who lost his life.

The facts do not make a strong case for the plaintiff, the accident being such as would in all probability have happened to any engine. The verdict of the jury for $500 does not evince passion, prejudice, or corruption authorizing the Court to set it aside. If it shows feeling at all, it is sympathy for the widow who sues.

The judgment for $5,000 is set aside, and a judgment rendered here for $500, with interest from the date of that verdict. The railroad will pay all costs accruing before and including the first verdict; defendant in error will pay all other costs.

Judge Folkes was incompetent, and did not preside.