## In re T. H. BUNCH COMMISSION CO.

(District Court, E. D. Arkansas, W. D. August 3, 1915.)

BANKRUPTCY ⨀161—VOIDABLE PREFERENCES—EFFECT IN DELAY IN RECORDING MORTGAGES.

Under Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 544) § 47, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), vesting the trustee in bankruptcy with all the rights of a creditor holding a lien and section 60a, as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (Comp. St. 1913, § 9644), declaring that a person shall be deemed to have given a preference if, being insolvent, he has, within four months before filing the petition or after the filing and before adjudication, made a transfer of any of his property, and that the period of four months shall not expire until four months after date of the record of the transfer as required by law, and section 60b, as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (Comp. St. 1913, § 9644), declaring that if, at the time a bankrupt makes a transfer, or at time of recording thereof, as required by law, being within four months before filing of petition in bankruptcy or after the filing and before adjudication, he is insolvent, the transfer shall operate as a preference, a mortgage, required by Kirby's Dig. Ark. §§ 5395, 5396, 5407, to be recorded to be good as against subsequent purchasers or lien creditors, must be treated as made when first filed for record, and when not filed until within four months of the mortgagor's adjudication in bankruptcy, it is invalid as against his trustee, who may recover the mortgaged property or its value, if in possession of the mortgagee, though the mortgage was in fact previously executed to secure a bona fide debt; the bankrupt being insolvent at the time of the filing for record.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. ⨀161.]

In Bankruptcy. In the matter of the T. H. Bunch Commission Company, bankrupt. Intervention petition by Mrs. Laura L. Bunch, for the possession of personalty in the possession of the trustee in bankruptcy. Intervention petition dismissed, without prejudice.

This is an intervention by Mrs. Laura L. Bunch, for the possession of certain personalty in the possession of the trustee in bankruptcy in this cause. She claims title thereto by virtue of a chattel mortgage executed by the bankrupt to her for the purpose of securing an indebtedness due her from the bankrupt. To this petition of intervention the trustee filed an answer, admitting the possession of the property claimed by the intervener, and the execution of the mortgage as set forth in the petition, but denied that it was a valid mortgage as against the trustee, for the reason that the bankrupt corporation was created and existed under the laws of the state of Arkansas, and had its principal office in the county of Pulaski, and that the mortgage was not legally filed for record until October 7, 1914, within four months before the filing of the petition in bankruptcy herein; that at the time of such recording in Pulaski county the said Commission Company was insolvent, and the effect of the enforcement of said mortgage would and will be to enable the intervener to obtain a greater percentage of her debt than other creditors of the Commission Company, of the same class, whose debts were in existence at the time said mortgage was given and accepted, and thereafter; that at the time of recording the said mortgage in Pulaski county, as aforesaid, the intervener had reasonable cause to believe that the enforcement of said mortgage would prefer her to other creditors.

The intervention was referred to the referee in bankruptcy as special master, and was submitted to him upon an agreed statement of facts, the substance of which is: "That the Commission Company, the bankrupt, is a corporation organized November 3, 1909, under the laws of the state of Arkansas.

Its principal place of business and its office for the transaction of business is, and at all times was, in Pulaski county, state of Arkansas. That T. H. Bunch has been the president ever since its organization, and the intervener is his wife; that on December 18, 1913, the said T. H. Bunch, acting for the Commission Company, borrowed from the intervener $20,000 in money, and for the purpose of securing the same executed in behalf of the Commission Company a note for $20,000 to Mrs. Bunch and a chattel mortgage on the property in controversy. After it had been delivered to her, she requested her husband to take such steps as were necessary to validly file or record the mortgage. That the mortgage was filed on January 10, 1914, with the recorder of deeds of Lonoke county, Ark., but with no directions to record same, nor was there any indorsement made thereon, as provided by section 5407 of Kirby's Digest. The personalty covered by the mortgage was at that time in Lonoke county. On October 1, 1914, a suit was filed in the chancery court of Pulaski county, Ark., by creditors of the Commission Company, asking for the appointment of a receiver of the Commission Company to wind up its affairs, upon the ground that it was insolvent. That upon a hearing the court by consent of the parties appointed a receiver on October 3, 1914, upon the ground of said insolvency. On October 3, 1914, the attorney for Mrs. Bunch, who was also the attorney of the Commission Company, was advised that her mortgage was on file in the recorder's office in Lonoke county, but had not been recorded or indorsed, so that it could be legally filed without recording, whereupon the attorney withdrew the mortgage and immediately refiled it with the recorder of deeds of Lonoke county, with an indorsement as required by law for filing, but not recording, chattel mortgages. On October 7, 1914, the attorney for Mrs. Bunch directed the recorder of Lonoke county to record the mortgage in that county, and when recorded to return it, whereupon it was indorsed by the recorder of Lonoke county, 'Filed for record at 11:00 o'clock a. m. October 7, 1914.' He immediately recorded it, and then sent it to this attorney at Little Rock, in Pulaski county, who then filed it for record with the recorder of Pulaski county, at 3:20 p. m. October 7, 1914, and the same is now of record in said county. The attorney who attended to these matters was also the attorney of the Commission Company, and had, up to that time, also been the attorney for Mrs. Bunch, but another attorney was employed by Mr. Bunch to act for Mrs. Bunch thereafter. At that time Mrs. Bunch was away from home, and all this was done by direction of her husband, the president and manager of the Commission Company. She returned home on October 11, 1914, and after being advised of what had been done, ratified the employment of a new attorney and everything that had been done on her behalf during her absence by either of the attorneys. At the time she ratified these acts she knew that the receiver had been appointed by the chancery court and was in charge of the property of the Commission Company, including the mortgaged personalty, and she also knew that the Exchange National Bank, a creditor of the Commission Company, claimed that within the preceding two or three months approximately $35,000 or $40,000 had been obtained by the Commission Company from the bank in an unlawful way, and, as a result of the action of the bank on its claim, said receiver had been appointed and the Commission Company had ceased to transact business. At the time the application for a receiver was made to the chancery court the Commission Company was insolvent, having unsecured creditors whose claims exceeded in amount the fair valuation of its assets, and has been insolvent ever since."

The agreed statement also contains this stipulation: "It is stipulated and agreed that T. H. Bunch, if sworn as a witness in this cause, would testify that at the time of and after the appointment of the receiver for the Commission Company by the Pulaski chancery court, he did not personally think the said Commission Company was insolvent, but thought that the company could not pay some debts that were then due, but that its assets were sufficient to pay all its debts. Notwithstanding, for the purpose of the trial of this intervention, it is stipulated and agreed that at the time of and at all times after the appointment of said receiver by the Pulaski chancery court, the said T. H. Bunch had actual knowledge, acquired by him while acting not adversely to the interests of Mrs. Bunch, of such substantial facts and

surrounding circumstances as would put a man of ordinary prudence or business experience on inquiry, which inquiry, if pursued with reasonable diligence, would have disclosed that the said T. H. Bunch Commission Company did not have sufficient assets at a fair valuation as a going concern to pay its debts, and, further, that if said mortgage in favor of Mrs. Bunch was enforced, she would get a greater percentage of her debt than general creditors. It is agreed that T. H. Bunch had access to the sources of information, which, if reasonably pursued, would have disclosed the above facts. At no time did the said T. H. Bunch, or any officer of the T. H. Bunch Commission Company, or Mrs. Laura L. Bunch, or her attorneys, attempt or intend to conceal the existence of the said debt or the said mortgage from any one. On October 19, 1914, a petition in bankruptcy herein was filed, and on November 9, 1914, adjudication in bankruptcy therein was had. The debt secured by the mortgage is still unpaid. For the purpose of this case it is stipulated that the said T. H. Bunch, as president of the said Commission Company, had authority to make the loan and execute the note and mortgage on behalf of the Commission Company."

At the hearing before the master the parties agreed that the cause be submitted upon two issues only: (1) Whether the debt, in the securing whereof the chattel mortgage was made, is to be deemed a pre-existing debt as of the date of the transfer itself, or as of the date of the recording of said transfer itself, or as of the date of the recording of said transfer in Pulaski county, Ark.; (2) whether the recording of said transfer was by law required within the meaning of section 60 of the Bankruptcy Act. The special master found in favor of the trustee, and dismissed the intervention.

Rose, Hemingway, Cantrell, Loughborough & Miles, of Little Rock, Ark., for intervener.

H. M. Trieber, of Little Rock, Ark., for trustee.

TRIEBER, District Judge (after stating the facts as above). Section 60a of the Bankruptcy Act, as amended by the act of February 5, 1903, 32 Stat. p. 799, reads as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

Section 60b, as amended by the act of June 25, 1910, is as follows:

"If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The amendment of 1910 to section 47 reads:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights,

remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

As the act only applies so far as recording or registering of the transfer is concerned, if recording or registering thereof is required by law, which means the law of the state where the transaction occurs, it is necessary to ascertain and determine what the laws of that state require to be done. In other words, the question to be determined is, What is the effect of a failure to file for record a chattel mortgage as against a trustee in bankruptcy under the laws of Arkansas, where this transaction took place? To answer that we must look to the statutes of that state and the construction placed upon them by the highest court of that state. The statutes of Arkansas, as digested in Kirby's Digest, applicable to the issues herein involved, are:

"Sec. 5395. All mortgages whether for real or personal estate, shall be proven and acknowledged in the same manner that deeds for the conveyance of real estate are now required by law to be proven or acknowledged; and when so proven or acknowledged shall be recorded, if for lands in the county or counties, in which the lands lie, and if for personal property, in the county in which the mortgagor resides. Provided, if the mortgagor is a nonresident of this state, the mortgage shall be recorded in the county in which the property is situated at the time the mortgage is executed.

"Sec. 5396. Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage."

"Sec. 5407. Whenever any mortgage or conveyance intended to operate as a mortgage of personal property, or any deed of trust upon personal property, shall be filed with any recorder in this state, upon which is indorsed the following words, 'This instrument is to be filed, but not recorded,' and which indorsement is signed by the mortgagee, his agent or attorney, the said instrument when so received shall be marked 'Filed' by the recorder, with the time of the filing upon the back of said instrument; and he shall file the same in his office, and it shall be a lien upon the property therein described from the time of filing, and the same shall be kept there for the inspection of all persons interested; and such instrument shall thenceforth be notice to all the world of the contents thereof without further record."

The effect of an unrecorded mortgage under these laws, is well settled by the decisions of the highest court of that state, and has been ever since 1848, when the opinion in Main v. Alexander, 9 Ark. 112, 47 Am. Dec. 732, was delivered. A mortgage, although not filed for record, is good between the parties or as against the administrator of the mortgagor, or of a voluntary assignee or a receiver in insolvency, but is void as against subsequent purchasers or creditors who have obtained a lien on the mortgaged premises by a levy under execution or a seizure under attachment. The fact that they have actual notice of the mortgage is immaterial, if it is not filed for record in the proper office prescribed by law, and not then if so defectively executed or acknowledged, as not to entitle it to record. These rules have been consistently adhered to by the Supreme Court of the state ever since Main v. Alexander was decided.

In Carnall v. Duval, 22 Ark. 136, a mortgage had been filed for

record with the clerk, who was ex officio recorder of deeds, and of which the clerk had actual notice, but the acknowledgment was defective so as not to entitle it to record under the laws of the state. With full knowledge of these facts, the clerk purchased the property, and the court held that his title was superior to that of the mortgagee. The decisions of the Supreme Court of Arkansas are quite numerous and uniform on that subject. Among the many decisions, the following may be consulted: Watson v. Thompson Lumber Co., 49 Ark. 83, 4 S. W. 62; Smead v. Chandler, 71 Ark. 505, 76 S. W. 1066, 65 L. R. A. 353; Cumberland Building & Loan Ass'n v. Sparks, 111 Fed. 647, 49 C. C. A. 510, a case arising under the laws of Arkansas and determined by the Circuit Court of Appeals for the Eighth Circuit.

The attempted filing and the later recording of the mortgage in Lonoke county were void for two reasons: First. A chattel mortgage must, under the provisions of section 5395, be filed or recorded in the county in which the mortgagor resides, otherwise it is no better than if not filed or recorded. Beaver v. Frick Co., 53 Ark. 18, 13 S. W. 134. Under a similar statute of the state of New York it was held, in Stewart v. Platt, 101 U. S. 731, 735, 737, 25 L. Ed. 816, that a chattel mortgage filed for record in a town other than that where the plaintiff resided, although the property was in the town where the mortgage was recorded, is void as against creditors. Second. Section 5407 requires a certain indorsement to be made when a chattel mortgage is to be merely filed, but not recorded. Failure to make such an indorsement, or one practically to the same effect, is insufficient, and is no lien on the property, as against subsequent purchasers or creditors, although verbal directions were given to the recorder of deeds to file it, but not record it. Bowen v. Fassett, 37 Ark. 507; Dedman v. Earle, 52 Ark. 164, 12 S. W. 330; Davis v. Perry, 64 Ark. 369, 42 S. W. 768.

A provision in the statutes of Colorado requires an affidavit by the mortgagee to be recorded annually on the records of the county wherein the mortgage is recorded that the mortgage was given in good faith, and the amount still unpaid. In Williams v. German-American Trust Company, 219 Fed. 507, —— C. C. A. ——, the Circuit Court of Appeals for the Eighth Circuit held that the failure to comply with these requirements of the statute made the mortgage void as against a trustee in bankruptcy, the court, quoting from Ferris v. Chambers, 51 Colo. 368, 117 Pac. 994, the following excerpt:

"Provisions of a statute, rendering a chattel mortgage effective, even though the mortgagor retains possession of the property, are statutory, and if the statute prescribes that, in order to preserve the lien of a mortgage with the property in the possession of the mortgagor, something shall be done, that thing must be done as prescribed by the statute."

The cases cited by the learned counsel for the intervener are not in point.

In Martin v. Ogden, 41 Ark. 186, the mortgage was held good as against the administrator, the court holding that the administrator is not a purchaser nor a creditor. In Wolfe v. Perkins, 51 Ark. 46, 9 S.

W. 432, the issue involved was whether an unrecorded mortgage was a violation of a provision in a fire insurance policy against incumbrances, and it was held that, the mortgage being a valid lien on the property insured between the parties, it was such a violation.

In Little v. Bank, 97 Ark. 61, 133 S. W. 166, and Arkansas Cypress Co. v. Meto Valley R. R. Co., 97 Ark. 534, 134 S. W. 1195, it was held that a receiver in an insolvency proceeding, not being a purchaser nor a creditor, occupied no better position than the mortgagor.

There can be no doubt but that if, before the mortgage was filed in Pulaski county on October 7, 1914, a creditor would have caused the mortgaged property to be seized under an execution or attachment, the lien obtained thereby would have been superior to that of the mortgagee under the laws of the state of Arkansas as uniformly construed by the Supreme Court of that state ever since 1848.

Is the trustee in bankruptcy entitled to the same rights that such a creditor would have in view of the fact that the agreed statement of facts admits that the Commission Company was, at the time the mortgage was filed for record in Pulaski county, insolvent; that T. H. Bunch, its president, who acted as the representative and agent for the intervener, and the attorney who was employed by Mr. Bunch for Mrs. Bunch and acted for her in filing the mortgage for record, actually knew, or beyond question had reasonable cause to know, at the time the mortgage was filed by him for record in Pulaski county that the Commission Company was insolvent, and that the effect of the mortgage would be to enable Mrs. Bunch to obtain a preference over other creditors, who had unsecured claims?

Prior to the amendments of 1903 and 1910 of the Bankruptcy Act it has been determined in York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, that the trustee in bankruptcy occupied no better position than the mortgagor, and if the mortgage was good against the mortgagor, it was good against the trustee. By the amendment of 1903 the period of four months within which a preference could be subject to attack by the trustee in bankruptcy was to be computed from the date of the recording or registering of the transfer, "if by law such recording or registering is required."

There has been some conflict among the courts inferior to the Supreme Court (that court never having passed upon that question) what the effect of the amendment of 1903 was; but the Circuit Court of Appeals for the Eighth Circuit, in First National Bank v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148, held that where the statutes of a state required liens to be recorded, the question of insolvency and knowledge thereof is to be determined as of the date when the mortgage was filed for record, and this date is to be adopted as the date for the purpose of determining the four-month period for the purpose of determining the legality of a preference. This decision has been followed ever since by that court. McElvain v. Hardesty, 169 Fed. 31, 94 C. C. A. 399; People's State Bank v. Gleason, 178 Fed. 1004, 101 C. C. A. 663, affirmed without an opinion, on the authority of the Connett Case; Mattley v. Giesler, 187 Fed. 970, 110 C. C. A. 90; Lathrop Bank v. Holland, 205 Fed. 143, 123 C. C. A. 375; Williams v. German-American Trust Co., supra; The T. L. Smith

Co. v. Orr, 224 Fed. 71, —— C. C. A. ——, filed May 12, 1915. Other appellate courts have followed this rule: Remington on Bankruptcy (2d Ed.) § 1379½; Brigman v. Covington, 219 Fed. 500, —— C. C. A. —— (4th Ct.).

The language of the statute, especially as amended by the act of 1910, is so clear that there is nothing left to construction. But if there were room for doubt as to the intention of Congress on that subject, it is removed by the reports of the judiciary committees of the two houses of Congress when the amendment of 1910 was pending. Senate Report No. 691, Sixty-First Congress, Second Session, which accompanied the bill for these amendments, after it had passed the House and was reported to the Senate, concurs in the report of the House Judiciary Committee, which reads as follows:

"The object of this amendment is further to protect against the evil of secret liens, against which evils this same section was amended in 1903, but in such an unfortunate way as not effectually to prevent such liens. As the present law stands, even as amended in 1903, secret liens are still being held good in many jurisdictions, notably in Wisconsin, where the Supreme Court of that state has held in effect, in the case of Claridge v. Evans [137 Wis. 218] 118 N. W. 198 [803, 25 L. R. A. (N. S.) 144], that a mortgage withheld for years from record is not a preference, even if finally filed within a few days before bankruptcy, provided the debtor was not insolvent at the time it was given, years beforehand, or provided it were given for money then passing.

"Thus as the law stands, even by the amendment of 1903 as construed in many jurisdictions, a debtor may, if solvent at the time or if presently passing consideration be then received, give a chattel mortgage or other lien upon his property requiring recording by the state law, and the creditor receiving it may keep this lien off the record for months or even years (if not so done by collusive agreement) and filed it within a few days of bankruptcy, and yet the lien be held perfectly good. This is so held because the courts rule that the insolvency of the debtor, the existence of a pre-existing debt, and all the other elements of the preference are to be determined as of the date of the transfer between the parties. The amendment of 1903, by declaring the four-month period should not begin to run until the date of the recording where the recording is 'required' by state law, evidently attempted to make the date of the recording in such instances the date at which the existence of insolvency of a pre-existing consideration and of all the other elements of the preference should be taken.

"Nevertheless, the amendment of 1903 did not effectually accomplish this object. As the law now is construed, even if the recording be not done until within the four-month period, on the very eve of bankruptcy, yet if at the time of the original transfer, which might have occurred years beforehand, the debtor was solvent or the lien had been given upon a then presently passing consideration, the transfer will not be set aside as a preference, the date of the 'transfer' under any theory always being necessarily the date at which all the elements of the preference must be proved to have existed.

"The real trouble it seems, is this: There are two times of 'transfer' in such cases; as between the transferror and the transferee obviously the time of transfer is the time of the original execution and delivery of the instrument to the grantee or transferee, regardless of its registration, but as to other creditors and the rest of the outer world, the 'transfer' is, by the statute, not a complete 'transfer' at all until recording, until delivery to the public recorder, then and not until then the debtor signifying to outside parties, to all others that might become interested in his assets, the effectual separation of the liened property from the rest of his assets. This, it must be conceded, is the bottom principle upon which rest the recording statutes of all our states. It is also the bottom principle of the right to legislate against secret liens. Thus, in our bankruptcy preference statute, the great object likewise should be to make clear that the 'transfer', so far as outside parties becoming interested

in the estate are concerned, is not complete or perhaps is not even to be considered a 'transfer' at all (in cases where state law requires recording as against creditors) until delivery of the instrument to the recorder for registration.

"Creditors, then, by these state Supreme Court decisions construing the preference provisions of the present Bankruptcy Act, must be able to prove that at the time of the 'transfer,' perhaps several years beforehand, the debtor was then insolvent, the debt was then a past, a pre-existing, debt, etc., a practical impossibility; indeed, an unreasonable requirement, since it is the present insolvent fund of the debtor that is rightly involved, and not some ancient fund existing years beforehand.

"The proposed amendment squarely and clearly makes the date of the recording (where recording is required under state law to make the lien valid as against levying creditors) the date at which the creditor is to prove the existence of all the elements of a preference—truly the right date, for, as above noted, it is the present insolvent fund with which creditors are concerned, not the debtor's estate in the condition which might have existed two or three years beforehand.

"Further, the amendment of 1903, making the existence of 'reasonable cause to believe' on the creditor's part a prerequisite to the trustee's right to recover the preference from him, required that this reasonable cause of belief should be that a 'preference was intended to be given,' rather than that a 'preference would be effected.' Logically it is the creditor's knowledge or belief that a preference would be effected that should be the test, rather than his knowledge or belief of the debtor's intention to prefer.

"This amendment, viewed in the light of the previous discussion, would seem to speak clearly. It brings forward to the date of the recording the proof of the insolvency and of all other operative facts of the preference, and makes the section conform to the real and actual intentions of the framers of the amendment of 1903.

"Indeed, it is perhaps merely declaratory of the law as it exists to-day, as laid down in the following cases, to wit:

"Bank v. Connett, 142 Fed. 33 [73 C. C. A. 219, 5 L. R. A. (N. S.) 148], Circuit Court of Appeals: 'The mortgages constituted a transfer of his property, and their effect was to enable the bank to obtain a greater percentage of its claims than other creditors. They were recorded within four months of the filing of the petition in bankruptcy. Therefore, assuming that a recording is required by the law of Missouri, it follows that a preference arose under section 60a. And, in our opinion, it also follows that the preference arose when the mortgages were recorded, and not as of the date they were given. In other words, the amendment of 1903 was intended to remedy the evil resulting from secret instruments of transfer of the bankrupt's property, the withholding of them from record until shortly before the institution of bankruptcy proceedings, and the then assertion of them as of the prior date of their execution and delivery. And this was accomplished by making the rights of a creditor thus favored determinable by the conditions existing when he caused the transfer to him to be recorded as required by the state law rather than by those existing at the time he secured it.'

"McIlvain v. Hardesty, 169 Fed. 31 [94 C. C. A. 399] 22 Am. Bankr. Rep. 320 (U. S. C. C. A. from Mo.): '* * * The effect of the transfer to McIlvain is to be judged as if made on the 7th day of July, 1905, when it was filed for record. If C. & C. were then insolvent, and if the effect of the enforcement of the transfer was to enable McIlvain to obtain a greater percentage of his debt than any other of their simple contract creditors, the transfer constituted a preference within the meaning of the bankruptcy law. * * * As, for the purpose of this case, the transfer is to be treated as made on the date the agreement was recorded, so the transferee's belief or cause for belief concerning it must relate to that time.'

"Also see In re Hickerson (U. S. D. C.) 20 Am. Bankr. Rep. 682 [162 Fed. 345].

"But there are contrary holdings. The question is continually arising, and is a frequent source of litigation. It is of such importance that it should be set at rest."

This shows beyond question that the Congress was of the opinion that the rule laid down in First National Bank v. Connett correctly interpreted its intention, when it enacted the amendment of 1903. But as the courts were not harmonious in the construction of this amendment, the act of 1910 was passed in order that there may be no room for doubt that the opinion in the Connett Case correctly interpreted the congressional intention. The mortgage must therefore be treated as executed on October 7, 1914, when it was first filed for record in accordance with the laws of the state and became a valid lien against creditors who had secured a lien by seizure under execution or attachment, or the trustee in bankruptcy, who occupies such a position; his right as such dating back four months prior to the institution of the proceedings. First Nat. Bank v. Connett, 142 Fed. 33, 40, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148. The indebtedness secured thereby was then pre-existing, and, the Commission Company being then insolvent, of which fact the agent and attorneys of the intervener had notice and reasonable cause to believe that the enforcement of the mortgage would effect a preference, and being within four months preceding the filing of the petition in bankruptcy against the Commission Company, it is clearly voidable under the provisions of sections 60a and 60b. As the trustee could have recovered the property, or its value, if in the possession of the intervener, he can, of course, defeat an action against him for the recovery of the property by one claiming under such a voidable instrument.

The conclusions of law reached by the special master are correct, and the exceptions thereto are overruled. The result, no doubt, works a great hardship on the intervener, who acted in good faith and parted with her money in the belief that it was to be secured by the mortgage. There is no act of hers which savors in the least of fraud. But courts are bound to enforce the law as it has been made by the proper legislative department of the government and cannot make shipwreck of it to avoid hardships. It is a well-known fact that several efforts have been made by the State Bar Association of Arkansas to have these statutes as construed by the Supreme Court of the state amended so as to conform to the more liberal view prevailing in many other states, as to notice of unrecorded or improperly recorded mortgages, but these efforts have failed of success, the Legislature declining to act on these suggestions, and the Supreme Court holding that the principle laid down in Main v. Alexander has become a rule of property, which can only be changed by legislative action.

The order will be that the intervention be dismissed at the cost of the intervener, but without prejudice to her right to prove the claim against the estate as an unsecured claim, if found to be a valid claim.