# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE VICTOR CHEMICAL WORKS, Plaintiff in Error, *vs.* INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed June 22, 1916.*

1. CONSTITUTIONAL LAW—*law should, if possible, be given such construction as will render it constitutional.* Where the constitutionality of a statute is questioned it is the duty of the courts to adopt such a construction as will render the act valid, if the language used will permit, rather than give it a construction which will render it invalid.

2. SAME—*Workmen's Compensation act of 1913 is not compulsory.* The Workmen's Compensation act of 1913, when properly construed, is elective and not compulsory as respects employers who have had a reasonable time to give notice of their intention not to be bound by the law, and is not, as to them, invalid.

3. WORKMEN'S COMPENSATION—*act of 1913 construed as to giving notice of intention not to be bound thereby.* Under the Workmen's Compensation act of 1913, employers who have elected to be bound thereby are bound until they give notice of an intention to withdraw, which they must give at least sixty days before each first day of January after the law took effect; but while employers not giving notice of their intention to come under the act are bound thereby until they give notice of a contrary intention, yet they have a right to give such notice at any time after the act took effect up to sixty days before the succeeding first day of January, after which time their notice of withdrawal is governed by the

same rule as applies to notices of those who have elected to be bound by the act.

4. SAME—*alien dependents are included within the act of 1913.* Alien dependents of an employee are within the meaning of the Workmen's Compensation act of 1913 even though the title of the act is "An act to promote the general welfare of the people of the State," etc., as section 5 of the act, which defines "employee," includes aliens.

5. SAME—*sufficiency of evidence to sustain decision of Industrial Board as to the facts is not for the courts.* If there is any competent evidence to support the decision of the Industrial Board on questions of fact the decision must be accepted as final in the absence of fraud, as the question of the sufficiency of the evidence is not for the courts.

6. SAME—*books and records must be competent and properly authenticated.* The arbitration committee in a workmen's compensation case may hear witnesses and inspect books and records, but the books and records must be competent and properly authenticated, and the evidence received must be incorporated into the record of the proceeding as required by the act.

7. SAME—*decision founded solely on hearsay or other improper evidence cannot stand.* A decision of the arbitration committee and the Industrial Board which is founded solely on hearsay or other improper evidence cannot stand when the record of the proceeding is brought to the circuit court on a writ of *certiorari.*

8. SAME—*plaintiff need not prove that deceased employee was not a casual employee.* Considering the purpose of the Workmen's Compensation act of 1913 and its provisions with reference to the parties agreeing to the facts in the case, it is the duty of the employer, if he desires to raise the defense that the injured person was a casual employee, only, to allege and prove that fact on the hearing, and he cannot remain silent and take advantage of an absence of proof on the subject by the plaintiff.

9. SAME—*verdict of coroner's jury is admissible in compensation proceeding.* The verdict of the coroner's jury at the inquest on the body of a deceased employee is admissible in evidence in a proceeding under the Workmen's Compensation act of 1913.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

LEWIS A. STEBBINS, and BURTON P. SEARS, for plaintiff in error.

CRAIG A. HOOD, SIMON T. SUTTON, and HARRY A. GOLDSMITH, for defendants in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

August 4, 1914, one of the defendants in error, Casimo Landolina, as administrator of the estate of Filippo Landolina, deceased, filed with the Industrial Board of Illinois his application for adjustment of claim against the plaintiff in error, the Victor Chemical Works, under the Workmen's Compensation act, asserting that his brother, Filippo Landolina, was killed September 6, 1913, in an accident arising out of his employment by the plaintiff in error, and that claim for compensation was made on the plaintiff in error within six months thereafter under the Workmen's Compensation act. An arbitration committee was appointed as provided in the act, a hearing was had, evidence was taken, and said committee on August 26, 1914, entered its award against the plaintiff in error and in favor of the administrator for $6 per week for four hundred and sixteen weeks from September 6, 1913. The plaintiff in error filed a petition with the Industrial Board to review the award of the arbitrators, and said board on September 12, 1914, confirmed the award. No additional evidence was taken before the Industrial Board. The plaintiff in error thereafter filed its petition for a writ of *certiorari* with the circuit court of Cook county, and on April 3, 1915, said writ was ordered to issue to said Industrial Board to send up the record of said proceedings, and on April 20, 1915, a certified copy of all proceedings had before said board was returned to the circuit court pursuant to said writ. Thereafter, on November 24, 1915, the attorneys for the administrator moved to quash the writ of *certiorari*, and upon a hearing on said motion and an inspection by the court of the record of the Industrial Board the court entered an order quashing the writ of *certiorari* and awarding a *procedendo,*

with costs.   On motion of the plaintiff in error the court
granted a certificate that the cause was one proper to be
reviewed by this court and signed and sealed a bill of ex-
ceptions.   A writ of error was sued out from this court.

It is assigned as error that the circuit court of Cook
county erred in quashing the writ of *certiorari* and award-
ing the writ of *procedendo* for the reasons (1) that the
Workmen's Compensation act of 1913 is unconstitutional;
(2) that said act of 1913 does not apply to non-resident
alien dependents; (3) that the evidence produced before
the arbitrators, which was passed upon by the Industrial
Board and is contained in the record, did not show that the
deceased had contributed to the support of his parents; (4)
that it was not affirmatively shown that the deceased was
not a casual employee; and (5) that it was not shown that
a proper claim for compensation had been made.   These
contentions will be considered in their order.

*First*—As to the constitutionality of the act, this court
has held the Workmen's Compensation act of 1911, which
is similar to and of the same general effect as the act of
1913, to be constitutional.   (*Deibeikis* v. *Link-Belt Co.* 261
Ill. 454; *Crooks* v. *Tazewell Coal Co.* 263 id. 343; *Dietz*
v. *Big Muddy Coal Co.* 263 id. 480.)   Plaintiff in error
claims, however, that the act of 1911 was held constitu-
tional by this court because it was elective and not com-
pulsory; that the act of 1913, while in terms elective, the
same as the act of 1911, is in effect compulsory, for the
reason that the time given for election by employers as to
whether or not they would accept or reject the provisions
of said act is unreasonably short.   The act was passed by
the legislature and was approved by the Governor on June
28, 1913, and went into effect the first day of July follow-
ing, by reason of the provisions of the constitution.   With-
out discussing the reasoning of this court in the cases above
referred to in which the act of 1911 was held constitutional,
and assuming, for the sake of argument, that the act of

1911 was held constitutional because it was elective and that the act of 1913 should be held constitutional for the same reason, we think it is true, as contended by plaintiff in error, that where the act is made elective a reasonable time must be given by the act in which to exercise the election. Is the act, however, subject to the objection made?

Section 1 of the act (Laws of 1913, p. 337,) provides: "That any employer in this State may elect to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this act." Paragraph (*a*) of the same section provides: "Election by an employer to provide and pay compensation according to the provisions of this act shall be made by the employer filing notice of such election with the Industrial Board." Paragraph (*b*) provides: "Every employer within the provisions of this act who has elected to provide and pay compensation according to the provisions of this act shall be bound thereby as to all his employees covered by this act until January 1 of the next succeeding year and for terms of each year thereafter: *Provided,* any such employer may elect not to provide and pay the compensation herein provided for accidents resulting in either injury or death and occurring after the expiration of any such calendar year by filing notice of such election with the Industrial Board at least sixty days prior to the expiration of any such calendar year, and by posting such notice at a conspicuous place in the plant, shop, office, room, or place where such employee is employed, or by personal service, in written or printed form, upon such employee, at least sixty days prior to the expiration of any such calendar year." Section 2 provides: "Every employer enumerated in section 3, paragraph (*b*), shall be conclusively presumed to have filed notice of his election as provided in section 1, paragraph (*a*), and to have elected to provide and pay compensation according to the provisions of this act, unless and until notice in writing

of his election to the contrary is filed with the Industrial Board and unless and until the employer shall either furnish to his employee personally or post at a conspicuous place in the plant, shop, office, room or place where such employee is to be employed, a copy of said notice of election not to provide and pay compensation according to the provisions of this act; which notice of non-election if filed and posted as herein provided, shall be effective until withdrawn; and such notice of non-election may be withdrawn as provided in this act."

It is the contention of counsel that plaintiff in error not having taken affirmative action by filing a rejection of the act with the Industrial Board before July 1, 1913, was by the express terms of section 2 of the act conclusively presumed to have elected to have accepted the same and was bound thereby and could not escape from its terms until January 1, 1914, and then only by filing a notice of rejection by November 1, 1913. Before said date the accident from which this case arose occurred, September 6, 1913, at a time, therefore, before plaintiff in error could possibly have rejected the act and at a time when it had been arbitrarily forced into the position of having elected to accept the same. We do not so understand the meaning and intent of this act. When the constitutionality of a statute is questioned it is the duty of the courts, and also a rule of construction, to adopt such construction as will make the statute constitutional if its language will permit. There is a strong presumption in favor of the validity and constitutionality of an act, and courts should not declare acts of the legislature unconstitutional unless satisfied of their unconstitutionality beyond a reasonable doubt.

The main fault found with the act is section 2 above set out. The act was passed and went into effect on July 1, 1913. Either employers or employees could elect not to come within the provisions of the act. In the first sentence of the first section it is provided that any employer

may elect to provide and pay compensation, etc., according to the provisions of the act, and paragraph (*a*) following, provides that such election "shall be made by the employer filing notice of such election with the Industrial Board." So far there is required an affirmative action on his part. Paragraph (*b*) of section 1, immediately following paragraph (*a*) above set out, provides that "every employer within the provisions of this act who has elected to provide and pay compensation according to the provisions of this act shall be bound," etc., until January 1 of the next succeeding year.. Undoubtedly this provision would apply to all employers who had actually filed notice with the Industrial Board of their election to be bound by the act. Section 2 provides that every employer "shall be conclusively presumed to have filed notice of his election as provided in section 1, paragraph (*a*), and to have elected to provide and pay compensation according to the provisions of this act, unless and until notice in writing of his election to the contrary is filed with the Industrial Board," etc. No time is set in this section for filing such notice of election not to be bound by the act, and as far as the provisions of the section are concerned the notice could be given by the employer any time after the act went into effect. The act went into effect July 1, 1913, and no one would be under the act until after that date, hence those employers who would come under the act by virtue of the provisions of section 2 would be under the act from July 1, 1913, to some date subsequent to July 1, 1913, when they could give notice of their election not to be bound thereby. Such employers had some period within which to file notice not to be bound by the terms of the act. There is a distinction between those employers mentioned in paragraph (*b*) of section 1 who affirmatively file notice with the Industrial Board of their election to come within the act, and those employers mentioned in section 2 who are presumed to have filed notice of their election to come within the act and hence are

274 — 2

within the act unless and until notice in writing of an election to the contrary is filed with the Industrial Board. The former are only allowed to withdraw from the provisions of the act by filing notice sixty days before the expiration of a calendar year. The latter could file notice to the contrary at least prior to November 1, 1913.

Paragraph (*b*) of section 1 provides that every employer who has elected to come within the act shall be bound until January 1 of the next succeeding year and for terms of every year thereafter. We think that it was not the intention of the legislature to permit an employer who has either affirmatively filed his notice to come within the act or as to whom the act has become self-executing by reason of the provisions of section 2, to file the notice of withdrawal with the Industrial Board at any time in any year thereafter. We think, however, that any employer who had actually filed notice of his election to come within the provisions of the act could only withdraw from the same by filing a notice sixty days before the first of January in some succeeding year, and that any employer to whom the act was self-executing, as mentioned in section 2, would only be under the act, after it went into effect on July 1, 1913, until such employer filed a notice of his election to the contrary, and such employer would have up to sixty days prior to January 1, 1914, to give such notice and withdraw from the act. After that, the provision of the act providing for yearly terms would operate uniformly on all employers and require all of them to give sixty days' notice of withdrawal from the act prior to the first of January of some succeeding year. It is a familiar maxim that ignorance of the law excuses no one, and in this case plaintiff in error had over a month in which to learn the law and to file notice of its election prior to the accident, and it has made no claim that this was not sufficient time. As we do not think the act was mandatory or compulsory any more than the act of 1911, its constitutionality must be consid-

ered as settled by the cases heretofore cited in which the act of 1911 was construed.

*Second*—Plaintiff in error contends, conceding the parents of the deceased were dependent upon him for support, that the said parents were aliens and non-residents of the United States and were citizens of and residing in Italy, and the act has no application to non-resident alien dependents claiming as beneficiaries under the act. It is conceded that it is within the power of the legislature to give or not to give non-resident alien dependents the right to take as beneficiaries under the act, but it is claimed that the act does not give such right. It is first insisted that the title of the act confines its operation to citizens of this State. The act is entitled "An act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State," etc. The case of *Dred Scott* v. *Sanford,* 60 U. S. 693, and *Boyd* v. *Nebraska,* 143 id. 135, are cited, which held that the words "people of the United States" mean the same thing as "citizens of the United States;" also the case of *In re Silkman,* 84 N. Y. (88 App. Div.) 102, in which the court held that the phrase "people *of* the State of New York" does not include aliens, and intimated that the phrase "people *in* the State of New York" would so have included them.

In arriving at the meaning and intent of a legislative enactment every part thereof, as well as the title, must be taken into consideration. The words in the title "to promote the general welfare of the people of this State" do not necessarily mean that it is the intent and purpose of the act to limit compensation that may be paid for accidental injuries or death suffered in the course of employment to citizens of the State. The general welfare of the people of the State, or citizens of the State, might well be promoted by providing compensation for accidental injuries or death suffered by aliens, as well as citizens, in the course

of employment within the State. There are many alien employees within the State to whom the act should apply, and we can perceive no reason why it should not apply to them as well as to citizens. In many cases those depending upon them reside within the State, and the people or citizens of the State would be interested in not having aliens, as well as citizens, become charges upon the community by reason of injuries received in the course of employment. Moreover, the title, alone, is not the sole criterion but the terms of the act itself must be considered. Section 5 provides that the term "employee," as used in the act, shall be construed to mean "every person in the service of another under any contract of hire, express or implied, oral or written, including aliens, and minors who are legally permitted to work under the laws of the State, who, for the purpose of this act, shall be considered the same and have the same power to contract, receive payments and give quittances therefor, as adult employees, but not including any person whose employment is but casual or who is not engaged in the usual course of the trade, business, profession or occupation of his employer: *Provided,* that employees shall not be included within the provisions of this act when excluded by the laws of the United States relating to liability of employers to their employees for personal injuries where such laws are held to be exclusive." By the terms of the act we think that alien dependents are included.

In *Mulhall* v. *Fallon,* 176 Mass. 266, where this same question was raised, it was held that a mother who had never been a resident of the State of Massachusetts and who was a citizen and resident of Ireland was entitled to recover in the courts of Massachusetts in an action for negligence causing the death of her son. In that case it was said: "One or two cases may be found where a general grant of a right of action for wrongfully causing death has been held to confer no rights upon non-resident aliens. (*Deni* v. *Pennsylvania Railroad Co.* 181 Pa. St. 525; 59

Am. St. Rep. 676; 37 Atl. Rep. 558; *Brannigan* v. *Union Gold Mining Co.* 93 Fed. Rep. 164; but compare *Knight* v. *West Jersey Railroad Co.* 108 Pa. St. 250; 56 Am. Rep. 200.) On the other hand, in several States the right of the non-resident to sue is treated as too clear to need extended argument. (*Philpott* v. *Missouri Pacific Railroad Co.* 85 Mo. 164; *Chesapeake, etc. Railroad Co.* v. *Higgins,* 85 Tenn. 620; 4 S. W. Rep. 47; *Augusta Railway Co.* v. *Glover,* 92 Ga. 132; 18 S. E. Rep. 406; *Luke* v. *Calhoun County,* 52 Ala. 115.) * * * In all cases the statute has the interest of the employees in mind. It is on their account that an action is given to the widow or next of kin. * * * We cannot think that workmen were intended to be less protected if their mothers happened to live abroad or less protected against sudden than against lingering death. In view of the very large amount of foreign labor employed in this State we cannot believe that so large an exception was silently left to be read in."

In the case of *Guianios* v. *DeCamp Coal Mining Co.* 242 Ill. 278, this court held as to the right of alien beneficiaries to recover, as follows: "It is further insisted that the deceased was an alien,—a citizen of Greece,—and that this suit is for the benefit of his parents, brothers and sisters, who are not citizens of this country but reside in Greece, and that there should be no recovery under our statute in favor of these non-resident aliens. Counsel admits that in *Kellyville Coal Co.* v. *Petraytis,* 195 Ill. 215, this court, after reviewing the authorities, held the contrary, but insists that we should reverse that ruling because of the recent ruling of the United States Supreme Court in *Maiorano* v. *Baltimore and Ohio Railroad Co.* 213 U. S. 268. In that case the deceased was killed in Pennsylvania, and the Supreme Court of that State has consistently held that under its statute non-resident alien relatives could not recover. The United States Supreme Court, in deciding that case, followed the general rule of that court that the

construction of a State statute by the highest court of such
State must be accepted by the United States courts. Mani-
festly, under that decision, if this case were taken to the
United States Supreme Court that court would follow the
ruling of this court on this question." We think it is the
plain meaning and intent of the act not to except alien bene-
ficiaries from its provisions.

*Third*—It is insisted that there is no evidence that the
deceased had ever contributed to the support of his parents
within four years or that they were beneficiaries under the
act. Under paragraph (*f*) of section 19 of the act the de-
cision of the Industrial Board, acting within its powers, in
the absence of fraud, is conclusive. The circuit court may
review the decisions of the Industrial Board by *certiorari*
for errors of law, only. Whether legal evidence is offered
to support the decision of the Industrial Board as shown by
the record of proceedings, where such evidence is agreed
upon or preserved by a stenographic report, is a question of
law, but if there is competent or legal evidence to support
the decision of the Industrial Board it is not within the
province of the courts to pass on its sufficiency. We have
examined the evidence in the record on this point. The ad-
ministrator, Casimo Landolina, a brother of the deceased,
testified that the father of the deceased was living at Cac-
camo, Italy, and was sixty-three years of age; that the
mother was fifty-four years of age and was living with his
father; that there are some younger children, all under
twenty years of age, the oldest about seventeen; that the
deceased contributed to the support of this family in the
old country prior to his death; that the family lived upon
a farm of about four acres; that he had seen a receipt
for a post-office money order for $40 which the deceased
showed to him. Charles Costello testified that he knew the
deceased in Italy; that he and the deceased both came from
the same province; that he knew him at the time he ar-
rived in this country; that at the request of the deceased

hè went with him to act as an interpreter, because the deceased could not speak English, and assisted him to get a money order for $40, which he put in a letter addressed to his father, Giovanni Landolina, Caccamo, Italy; that the witness saw him address the envelope, seal it and mail it, and the money order was in it.   James Barto testified that he saw the deceased put money in a letter which he sent to his father in Italy; that the witness, at the request of the deceased, wrote a return address on the envelope.   There was other evidence, consisting of declarations of the deceased at the time he sent the money to his father and his purpose in sending it, and that his parents depended upon him for support, which was objected to and which objection should have been sustained.   The arbitration committee received this evidence, and the chairman stated that the committee was not bound by the rules of evidence.   The arbitration committee is allowed by the law to inspect premises, books and records and make such inquiries and investigations as it shall deem necessary.   The committee reports to the Industrial Board, and either party desiring a review of the report and decision of the arbitrators may file either an agreed statement of facts or a correct stenographic report of the proceedings.   In this case the arbitrators heard witnesses, which was within their power, but it requires no argument to show that when the arbitrators hear evidence there must be evidence that is competent and legal, as tested by the usual rules for producing evidence in any legal proceeding, to sustain their finding, otherwise they could make an award on other incompetent evidence or on no evidence at all, and this was not contemplated by the law.   Such evidence must also be preserved and incorporated into the record of the proceedings, as provided in the act and as above pointed out.   If books and records are examined, the contents relied upon must be competent and properly authenticated and must be set out in the record of the proceedings.   While a view or inspection of premises might be

helpful to the arbitrators in making a decision, there should be evidence of the fact, unless all parties agreed that the arbitrators might decide a claim before them from such view or inspection, alone.    In short, there must be some competent evidence to sustain the decision of the arbitrators and of the Industrial Board, and if founded on hearsay or other improper or insufficient evidence it is the duty of the circuit court, on *certiorari,* to remand the proceeding to the Industrial Board for proper proceedings.    We think, however, there was sufficient competent evidence to sustain the finding of the Industrial Board that the deceased left parents and that he had within five years contributed to their support.

*Fourth*—It is claimed that it was not shown by the plaintiff in error that the deceased was not a casual employee.    The second paragraph of section 5 of the act defines as employees, in addition to those in the preceding paragraph, every person in the service of another, etc., "but not including any person whose employment is but casual or who is not engaged in the usual course of the trade, business, profession or occupation of his employer."    In consridering this question recourse must be had to the provisions of the act and its general intent and purpose.    Section 15 of the act provides that the Industrial Board, which is created by section 13, shall have jurisdiction over the operation and administration of the act.    Section 16 provides that the board may make rules and orders for carrying out the duties imposed upon it by law, and that the process and procedure before the board shall be as simple and summary as reasonably may be, and that the board, or any member thereof, shall have the power to administer oaths, subpœna and summon witnesses, and to examine and inspect such books, papers, records, places or premises as may relate to questions in dispute.    Section 18 provides that "all questions arising under this act, if not settled by agreement of the parties interested therein, shall, except

as otherwise provided, be determined by the Industrial Board," and section 19 provides that any disputed questions of law or fact upon which the employer or employee or personal representative cannot agree, shall be determined by the board. Paragraph (*a*) of the same section provides for the appointment of a committee of arbitration, which was done in this case. Paragraph (*b*) provides for the hearing by the committee of arbitration and that such committee shall file its decision with the Industrial Board, which shall send to each party a copy thereof, and that either one of the parties, within fifteen days after receiving a copy of such decision, may petition the Industrial Board for a review, and shall within twenty days of filing such decision file with the board either an agreed statement of facts on the hearing before the committee of arbitration or a correct stenographic report of the proceedings of such hearing. Paragraph (*e*) provides that if a petition for review and agreed statement of facts or stenographic report is filed as provided in the preceding paragraph, the Industrial Board shall promptly review the decision of the committee of arbitration and the facts as they appear from said statement of facts or stenographic report, and shall also, if desired, hear the parties together, with such additional evidence as they may wish to submit, etc.

It will be seen that the general purpose of the act is to provide a method by which injuries received by employees in certain classes of occupations may be quickly adjusted, so that something shall be received according to fixed rules for determining compensation in said cases. It would seem to be the duty of both parties, under the act, either to agree upon a statement of facts or at least to submit all questions of law and fact for determination, and if the employer desires to raise the question as to whether or not the employee is a casual employee and not within the terms of the act he should submit evidence on that question. We have held that a plaintiff relying on a statute for recovery

need only negative the exceptions in the enacting clause, and it is for the defendant to show, by way of defense, that the case falls within an exception in some other clause of the statute. (*Toledo, Peoria and Warsaw Railroad Co. v. Lavery,* 71 Ill. 522, citing 1 Chitty's Pl. 223; *Chicago, Burlington and Quincy Railroad Co. v. Carter,* 20 Ill. 391.) Under this rule, in a suit at law governed by the strict rules of procedure it would be the duty of the defendant to show, by way of defense, that the case fell within an exception. But this is not a proceeding at law and is not altogether governed by the rules of legal proceedings. In suits at law by employees against employers to recover damages for injuries sustained in the course of employment, the employee, as plaintiff, is compelled, under the law and the rules of procedure, to make out a case, and must affirmatively show sufficient to entitle him to recover by reason of some fault or negligence of the employer. Since the enactment of the law in question compensation is to be paid by the employer if the employee is killed in the course of his employment irrespective of the negligence of the employer, and the main thing is to determine the amount of compensation which must be paid. The statute provides that if the parties can not agree as to the facts of the case it is their duty to bring in all matters of dispute, and under the terms of the act it would seem to be the duty of the employer to allege and prove, as a matter of defense, that the employment of the employee was but casual. We do not think the plaintiff in error can raise this question for the first time on appeal. It was its duty to raise this point before the board of arbitrators or the Industrial Board, and if plaintiff in error relied on such fact as a defense it was its duty to show it. On the hearing before the arbitrators the chairman of the board asked the attorney for plaintiff in error, at the beginning, if there was any dispute as to both the deceased and the employer being under the act, and he replied, "No, there is no dispute as to that."

*Fifth*—It is claimed that the record fails to show that the claim for compensation was made within six months after the accident, as is provided in section 24 of the act. The proof shows that the accident occurred September 6, 1913. The attorney for the administrator testified that he prepared a written claim for compensation under the act and gave it to a constable to serve on the plaintiff in error on March 5, 1914. He also produced a carbon copy of such written claim, and further testified that the superintendent of the plaintiff in error admitted that the constable had served the notice. This was not denied. The statute provides that no proceedings for compensation under the act shall be maintained unless claim for compensation has been made within six months after the accident. It also appears that the parties had corresponded through their attorneys in endeavoring to make a settlement of the matter. The statute is silent as to how such claim shall be made, and we think the proof sufficiently shows that a claim for compensation was made upon plaintiff in error within six months.

It is also claimed that the verdict of the coroner's jury empaneled to inquire into the death of the deceased was improperly admitted in evidence. Proceedings under the Workmen's Compensation act take the place of the ordinary action on the case against an employer for damages for causing the death of or injury to an employee. In actions for causing death by negligence we have held such evidence proper. *Foster* v. *Shepherd,* 258 Ill. 164; *Devine* v. *Brunswick-Balke Co.* 270 id. 504, and cases cited.

Perceiving no error sufficient to justify a reversal, the judgment of the lower court will be affirmed.

*Judgment affirmed.*